# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### AMERICAN ASS'N, Limited, v. HURST et al.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1893.)

#### No. 100.

1. COURTS—INJUNCTION TO STAY PROCEEDING IN STATE COURT.
    Sale of land by a sheriff under an execution issued out of a Kentucky court of equity on a sale bond filed against the sureties thereon is a "proceeding," within Rev. St. § 720, inhibiting injunctions by federal courts to stay proceedings in state courts, except in certain cases.

2. SAME.
    The federal court cannot enjoin such a sale, even though the land levied upon belongs to a stranger to the proceeding.

Appeal from the Circuit Court of the United States for the District of Kentucky.

In Equity. Bill by the American Association, Limited, against E. Hurst and J. C. Colson, to enjoin a sheriff's sale. Bill dismissed. Complainant appeals. Affirmed.

Statement by TAFT, Circuit Judge:

This was an appeal from a decree of the United States circuit court for the district of Kentucky, dismissing the bill of the appellant, the American Association, Limited, on the ground that the court had no jurisdiction to grant the relief prayed for.

After averring that the American Association, Limited, was a corporation and citizen of the kingdom of Great Britain, and an alien, and that the defendants were citizens of Kentucky, and that the amount in controversy exceeded $2,000, the bill set forth that the complainant was the owner of real estate in Bell county, Ky., the legal title to part of which was in the name of the complainant, and the legal title to the rest of which was in the name of Alex. A. Arthur, trustee; that all of the property described had lately been levied upon by Colson, one of the defendants, as sheriff of Bell county, Ky., under an execution issued in the Bell common pleas court in favor of the other defendant, E. Hurst, who was described in the execution as the master commissioner of said court; that this execution was issued against Alex. A. Arthur, trustee, and one John M. Brooks, for the sum of $14,834.63; that the levy was made by Colson against all of this property as the property of the complainant, and that, as sheriff, Colson had advertised that he would on a

day subsequent to the filing of the bill, offer the property for sale to the high-est and best bidder for cash in hand paid, under the execution; that before this, there had been instituted in the Bell court of common pleas an action in equity to procure the sale of certain real estate described in the proceeding as the property of the heirs of one Robert George; that the order for the sale of the real estate was entered, and the defendant Hurst was directed, as master commissioner, to make the sale; that, at the sale, the property was purchased by one Fish and another, who failed to comply with the terms of the sale, and subsequently transferred the benefit of their bid to one Alex. A. Arthur, denominated in the transfer as Alex. A. Arthur, trustee; that thereupon Arthur, trustee, and Brooks, above mentioned, executed two sale bonds as purchase money for the property, each in the sum of $10,-827.25; that the execution levied upon complainant's property was issued on these bonds, which are given by the statute of Kentucky the force of judgments; that Arthur had no authority, as trustee for complainant, to purchase the property, to sign the bonds, or to make the complainant in any way liable to pay the purchase money; that the assignment was not made to him for the benefit of the complainant, and he did not in fact intend, and did not have any right, to bind the complainant in the execution of the bond; that nevertheless, upon the claim that Arthur, as trustee, was acting merely for the complainant in signing the bonds, Hurst, as commis-sioner of the court, caused the execution upon said bonds to be issued; that Colson had levied the execution, and was about to sell the property; that a cloud would be cast upon the title of the complainant to the property if Colson did sell it, and that the complainant would be unable to sell the same, and would be thereby irreparably damaged. The prayer of the bill was that Colson be enjoined from selling the property under the execution, and that Hurst be enjoined from directing such sale.

Humphrey & Davie, for appellant.

Richards, Weissinger & Baskin, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, (after stating the facts.)   The court below held that the remedy sought by complainant was forbidden in the federal court by section 720 of the Revised Statutes, which de-clares that the writ of injunction shall not be granted by any court of the United States to stop proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.

The questions necessary for us to consider are—First, whether the sale of land by a sheriff under an execution issued out of a Kentucky court of equity on a sale bond filed therein against the sureties thereon is "a proceeding" in that court, within the meaning of section 720, Rev. St.; and, second, whether such a sale is "a proceeding," within the section, even if the land to be sold has been improperly levied upon as the land of a surety in the sale bond, and in fact belongs to another person, a stranger to the proceeding.

1. The provision authorizing executions on sale bonds is to be found in chapter 38, art. 11, of Bullitt & Feland's Statutes of Ken-tucky, (page 560.)   The first section of the chapter is as follows:

"Every bond taken on the sale of property under an order or judgment in chancery or on the sale of property under execution and every replevin and forthcoming bond shall be signed by the principal and sureties and attested by the person taking the same, or by some one in his presence. Subsec. 1. A bond so taken shall be returned to the proper office with a

report of the acts of the person taking it; and if taken under an execution, the latter must be returned with the bond. 2. All such bonds shall have the force and effect of a judgment, and on which if not paid at maturity, an execution may issue and shall be indorsed that no surety of any kind is to be taken."

Under the foregoing statute, the sale bond is a judgment against the principal and sureties thereon. In Kentucky the sale made by the commissioner in equity is not complete until a report of its terms and the sale bond taken shall have been returned to the court, and approved by a decree of confirmation. The right of the purchaser to take the property depends upon the sanction of that decree. Arnett v. Anderson, 11 Ky. Law Rep. 671, 672; Forman v. Hunt, 3 Dana, 614, 621; Busey v. Hardin, 2 B. Mon. 411; Taylor v. Gilpin, 3 Metc. (Ky.) 546; Freem. Ex'ns, 304a. When the order confirming the action of the commissioner is entered, it gives life to the sale bond, which then becomes an accepted obligation binding the principal and sureties to complete the sale in accordance with the terms of the bond, and is in effect a confessed judgment for the amount of the bond. It was formerly the practice in Kentucky, in proceedings in equity, for the chancellor to make an express provision in the order of sale that a sale bond for the deferred payments should be taken, which sale bond should have the effect of a judgment upon which an execution might issue. The bond was then taken by the commissioner, reported to the court, and his proceedings were confirmed. Debard v. Crow, 7 J. J. Marsh. 7, 10; Leavitt & Co. v. Goggin, 11 B. Mon. 229. It could hardly be contended that the execution issued on a sale bond, which was given the effect of a judgment by special order of the court, was not a proceeding in that court. Now that, by express statute, every order of sale impliedly requires the giving of a sale bond, which shall have the effect of a judgment, it is equally clear that the approval of the sale bond makes the execution, issued thereon in accordance with the statute, a proceeding of the court in which the bond is filed. The claim of counsel that it is a mere ministerial process issuing from the office of the court, without judicial sanction, cannot be sustained. It has been held in a number of cases that a purchaser at a judicial sale becomes a quasi party, and that, where credit is given to him under an order of a court of equity, the court retains jurisdiction to compel payment by him of the residue through attachment, or by resale of the property. Wood v. Mann, 3 Sumn. 318; Clarkson v. Read, 15 Grat. 288; Stephens v. Magruder, 31 Md. 168; Freem. Ex'ns, (2d Ed.) 313c. The statutory provision which we are considering merely gives another remedy, by which the court is required to secure to the parties in the case before it, payment of the purchase price bid at the sale had and confirmed by its decree.

2. But it is said that, even if an execution on a sale bond levied on the property of the obligees is a "proceeding" of the court in which the bond is filed, an attempt to levy such execution on the property of another, as the property of an obligor in the bond, is void, and as it is not authorized by the execution, and is without

the authority of the court, neither the levy nor the sale under it are "proceedings" of the court, within section 720. Counsel for appellant, to sustain this contention, rely on the case of Cropper v. Coburn, 2 Curt. 465, in which it was held by Mr. Justice Curtis, on the circuit, that the fifth section of the act of March 2, 1793, (1 Stat. 334; now section 720, Rev. St.,) did not prevent a United States court from enjoining a sheriff from levying on the property of A. under a process issued by a state court against B. In that case, Mr. Justice Curtis said:

"It must be admitted that an attachment on mense process out of a state court, which the sheriff is authorized by that process to make, is a proceeding in a court of a state, within the meaning of this act of congress; for the word 'proceedings' may properly include all steps taken by the court, or by its officers under its precepts, from the institution of the suit to the close of the final process which may issue thereon. But it is equally clear that an attachment on mesne process, which the sheriff was not authorized by that process to make, is in no sense a proceeding of the court from which such process issued. Thus, if a sheriff, under a writ of attachment against the property of A., should take his body, or the property of B., this would not be a proceeding of the court, but a mere trespass, for which any appropriate remedy may be instantly sought in any court having jurisdiction. As Chancellor Kent remarked in his fourth Commentary, (page 410:) 'If a marshal of the United States, under an execution in favor of the United States against A., should seize the person or property of B., then the state courts have jurisdiction to protect the person or property so illegally invaded.'"

If this is sound, complainant's bill ought not to have been dismissed, but the proposition thus laid down by Mr. Justice Curtis has not met the approval of the supreme court of the United States. In Freeman v. Howe, 24 How. 450, that court held that when property was taken and held under process, mesne or final, by a court of the United States, it was in the custody of the law, and within the exclusive jurisdiction of the court from which the process issued, and that the possession of the officer of such court could not be disturbed by process from any state court. In this opinion the supreme court dissented from the language of Chancellor Kent, quoted and relied upon by Justice Curtis in Cropper v. Coburn, and reversed the decision of the supreme court of Massachusetts in Howe v. Freeman, reported in 14 Gray, 566, which was based on the decision in Cropper v. Coburn. The decision of Freeman v. Howe is commented on at length, and reaffirmed, in Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, in which Mr. Justice Matthews delivered the opinion of the court. The same learned justice, when sitting on the circuit in Perry v. Sharpe, 8 Fed. 15, refers to Cropper v. Coburn, 2 Curt. 465, as contrary to subsequent authority. The principle of Freeman v. Howe, was reaffirmed, also, in the case of Buck v. Colbath, 3 Wall. 334, and was followed in Daly v. Sheriff, 1 Woods, 175, and in Ruggles v. Simonton, 3 Biss. 325.

It is contended that Freeman v. Howe and the subsequent cases do not apply to the case at bar because the result reached in them was founded solely on the public necessity of avoiding unseemly conflicts between courts over the possession of property, while this proceeding will affect only the levy of an execution on land and a sale thereunder; and by the law of Kentucky (McBurnie v. Over-

street, 8 B. Mon. 303) a levy on land merely establishes a lien, and does not disturb possession.

The principle of the decisions in Freeman v. Howe, Buck v. Colbath, and Covell v. Heyman has a much broader application than counsel for appellant concede. The principle is that, in order to preserve the dignity and protect the effectiveness of the process of courts of concurrent jurisdiction, and to avoid unseemly conflicts between them, and between their respective executive officers, no remedy of an injunctive or dispossessory character will be afforded by one court against the acts of the executive officers of the other court, when done under color of an order or process issuing from such other court, because it would have the inconvenient and anomalous effect to stay the proceedings in one court to allow another court to investigate the validity of acts done under such proceedings. A replevin of personal property in the hands of its officer, or an injunction against a levy upon personal property by such officer, will certainly not more offend the dignity of the court, or more interfere with the due discharge of business before it, than will an injunction against a levy on real estate by its officer under color of its process. Moreover, the acts which it was here sought to enjoin were not mere levies upon real estate, but were the sale of it, and the execution of a deed to the purchaser, with a possible writ of possession, or at least with title upon which to found ejectment; so that, even if the principle of Freeman v. Howe, and other like cases, only applies when there is to be a conflict of possession between one court and another, we think the remedy here sought would come within their inhibition.

Of course, in the case of tortious levies upon either personal property or real estate, the person injured may always hold the executive officer liable, as a tort feasor, for any wrong done in any court having jurisdiction; but comity and public policy require him to apply to the court issuing the process under color of which the wrong is or is about to be done for specific relief by order of injunction, or restoration of property. In Buck v. Colbath, ubi supra, Mr. Justice Miller points out the two kinds of process under which a sheriff or a marshal acts. In one, the order is directed against particular and described property; in the other, it is against all or any property of an individual to satisfy a judgment or decree or order of attachment. In the former case, the process is a complete protection to the officer executing it. In the latter case the marshal or sheriff is necessarily vested with a discretion to determine what property belongs to the debtor, in order that he may levy on it. For any injury he may do in the exercise of this discretion, he may be held liable in damages. The process of the court does not protect him from such an action, but it does shield him from injunction or replevin issuing out of another court, which would seriously interfere with and cripple the execution of the process of the court whose officer he is, by preventing an exercise by him of the discretion necessary to its efficiency. In the light of this distinction, it is clear that the act, however tortious, of an executive officer of a court, done under color of its process, is to be regarded as a "proceeding" of that court,

which comity and public policy require courts of concurrent jurisdiction not to interfere with by injunctive or dispossessory process. If this be the rule of comity and public policy in the absence of a statute, it is conclusive in determining the true construction of section 720, Rev. St., and the meaning of the words used therein, "proceedings in any court of the state." That section was passed, not to preserve comity and harmonious action between courts of the same sovereign exercising concurrent jurisdiction, but to attain such an end, and prevent unseemly conflict between courts of different sovereigns exercising concurrent jurisdiction over the same territory. The purpose of the statute is so important that a liberal construction should be given to accomplish it.

The decree of the court below dismissing the bill is affirmed.