## SOUTHERN BANK & TRUST CO. et al. v. FOLSOM et al.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1896.)

### No. 391.

1. CONFLICTING JURISDICTIONS—FEDERAL AND STATE COURTS.

The levy of an attachment issuing from the Tennessee chancery court, and the return of the writ to the court, place the attached land within the control of the state court. The action of the circuit court of the United States in appointing a receiver thereafter for the land thus attached was an excessive act of authority, and unwarranted under the well-established practice and usage of federal courts under such circumstances.

2. SAME—INJUNCTION BY FEDERAL COURTS.

The application of Rev. St. § 720, prohibiting a federal court from enjoining the proceedings of a state court, is not affected by the fact that the land, a sale of which is sought to be restrained, is the property of the person asking the injunction.

3. JUDGMENT—CONCLUSIVENESS.

A mortgagee is not concluded, so far as the priority of his mortgage is concerned, by a judgment rendered in a suit begun after the date of his mortgage, to which he is not a party.

4. CONFLICTING JURISDICTIONS—BOND SUBSTITUTED FOR PROPERTY.

Where, in a foreclosure suit in a federal court, a bond is given to protect the interests of one claiming a part of the property by reason of an attachment suit in a state court, the bond, in effect, takes the place of the property, and the jurisdiction of the federal court is not defeated by the fact that the state court first obtained possession.

5. UNREGISTERED INSTRUMENT—CREDITOR WITH NOTICE.

Under Mill. & V. Code Tenn. § 2890, providing that instruments not registered shall be void "as to existing or subsequent creditors or bona fide purchasers from the makers without notice," a creditor of the grantor is not affected by an unregistered instrument, though he had notice of its existence.

6. SAME—LEVY OF ATTACHMENT.

A creditor without a judgment, who obtains an attachment and levies it upon the land of his debtor, claimed by another under an unregistered deed, secures thereby a lien, which he may ripen into a title by subsequent decree, or sale under an execution.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

Bill by the Southern Bank & Trust Company against the East Tennessee Mining & Improvement Company. Complainant filed an intervening petition, to which H. M. Folsom, surviving partner of Folsom & St. John, was made defendant. From a decree in favor of Folsom the complainant and the obligors in a certain indemnity bond appeal.

The case is substantially this: Folsom & St. John, a firm of lawyers, claiming to be creditors of the Magnatite Iron Company, filed an attachment bill in the chancery court of Carter county, Tenn., against that company, and caused an attachment to be levied upon a tract of land in Carter county, as the property of that company, though claimed by the East Tennessee Mining & Improvement Company under some purported conveyance. Both corporations were made defendants,—the former by publication and original attachment, the latter by service of process. The Magnatite Company did not appear, and decree pro confesso was taken against it. The latter appeared, answered, and defended upon the ground that the property attached had been theretofore conveyed to it. Such proceedings were had in the state court as resulted in a decree against the Magnatite Company for the amount of the claim of Folsom & St. John, and directing

a sale of the land attached, for the satisfaction thereof. This chancery bill was filed September 22, 1892, and the attachment was levied and return made September 27, 1892. The final decree was August 8, 1893. From the decree the latter company prayed an appeal to the supreme court of Tennessee. This was disallowed under the well-settled rule in Tennessee, until after the sale. The execution of that decree of sale has been enjoined by virtue of a writ of injunction issued by the United States circuit court for the Eastern district of Tennessee, under an intervening petition filed in that court, in a case there pending, wherein the Southern Bank & Trust Company was complainant and the East Tennessee Mining & Improvement Company was defendant. The object of that bill was to foreclose a mortgage made by the defendant company to secure an issue of negotiable bonds. The property mortgaged consisted of lands situated in Tennessee, and embraced the tract attached in the state court, it having been acquired by the mortgagor company from the Magnatite Iron Company. This mortgage was executed March 2, 1891, and the complainant in the foreclosure suit was the trustee thereunder. This foreclosure suit was filed May 5, 1893,—a date, it will be observed, subsequent to the attachment suit in the state court. Under the foreclosure bill mentioned, receivers were appointed May 13, 1893, who were directed to take possession and hold the mortgaged lands subject to the further orders of the court. As already stated, the mortgaged land included the tract which had been attached by Folsom & St. John, and which, by virtue of the attachment and the return, was in the legal custody and control of the state court. The land, being a tract of wild, unoccupied mountain land, was never actually possessed by either the sheriff, under the state writ, or the receivers, under this federal court order. This fact seems to have averted an unseemly conflict between these independent and co-ordinate courts for the actual occupancy of the res. The intervening petition under which the execution of the decree of the state court has been enjoined was filed by the Southern Bank & Trust Company, the complainant in the federal foreclosure suit, and Folsom, as surviving partner of Folsom & St. John, was made a party defendant thereto. The object of this supplemental proceeding was to attack the decree of the state court, and have it declared a nullity. The attack was upon several grounds: (1) That the land attached as the property of the Magnatite Iron Company, and ordered to be sold for the satisfaction of the claim of Folsom against that corporation, was in fact the property of the East Tennessee Mining Company, having been sold and conveyed to the latter company before Folsom's bill was filed. (2) That the East Tennessee Mining Company had conveyed the same land by registered mortgage to the petitioner, as trustee, to secure an issue of bonds aggregating $100,000, and that these bonds were outstanding, in the hands of bona fide holders for value. This mortgage was made and registered before Folsom's bill was filed, and the petitioner, as trustee, was not a party to the state suit, and therefore not concluded by the decree holding the attached land subject to Folsom's claim. (3) That the statements of Folsom's bill were not such as to authorize an attachment under the law of the state. (4) That the state court had no jurisdiction over the Magnatite Iron Company; it having never been served with process, and the publication being unauthorized by law. (5) That no order for an attachment was made by the chancery court, or any judge thereof, and that the attachment was issued without authority of law. (6) That Folsom had actual notice of the sale and conveyance of the land attached before he rendered the service to that company which was the foundation for his debt, and was therefore estopped to deny the sale and conveyance; that the alleged defective registration could not, under such circumstances, be taken advantage of by him, nor the land subjected to attachment by him, in view of his knowledge of the unregistered deed when his debt originated. (7) The prayer of the petition was that the state chancery decree be declared null and void in so far as it was sought thereby to affect the rights of the Southern Bank & Trust Company as trustee under the mortgage made by the East Tennessee Mining Company. A preliminary injunction was awarded by the district judge, who also, at a subsequent date, overruled a demurrer interposed by Folsom to the jurisdiction of the court. A decree of foreclosure was pronounced in the principal case before disposing of this supplemental proceeding. All of the lands conveyed by the mortgage, including that under attachment in the state court, were sold outright, and bought in for the mortgagees by a committee of bondholders, who hold in

trust for all the beneficiaries under the mortgage. The sale was absolute, and free from the lien of Folsom's attachment. To protect Folsom a bond was executed and accepted, the condition of which was that if Folsom should succeed in establishing his claim as a prior liability or charge on the attached lands to that of the mortgage made by the East Tennessee Mining Company, the obligors should pay off and discharge the judgment in his favor. The district judge, who succeeded the judge granting the injunction, upon final hearing found that the land of the Magnatite Iron Company was subject to attachment by Folsom, as a creditor, by reason of the nonregistration of the conveyance to the East Tennessee Mining Company, and that Folsom's knowledge of the existence of an unrecorded conveyance at the time he rendered service to the Magnatite Company did not estop him from subjecting the lands so conveyed by unregistered deed to the satisfaction of his debt. He accordingly gave judgment upon the indemnity bond before mentioned for the full amount of Folsom's decree and costs. From this decree the Southern Bank & Trust Company and the obligors in the indemnity bond have appealed.

J. H. Barr, for appellants.

Curtin & Haynes and C. J. St. John, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, having made the foregoing statement of facts, delivered the opinion of the court.

1. The effect of the levy of the attachment issuing from the state chancery court, and the return of the writ into court, under the Tennessee statutes and decisions, was to place the attached land within the control and possession of the state court. It was an actual seizure of the res, and thereby passed into the exclusive possession of the court, as fully as if a receiver had been appointed. Cooper v. Reynolds, 10 Wall. 308, 317. However defective the proceeding under which the attachment issued, it would not follow that the state court was without jurisdiction. The object of the bill was to subject the land attached as the property of the Magnatite Iron Company to the satisfaction of its debts. For this purpose the land itself was seized, and thus drawn within the jurisdiction of the court by this assertion of control and power over it. The validity of that act of power and authority could not be questioned by another court so long as the state court retained the possession thus acquired. The subsequent appointment of receivers by the federal court, and the direction that they should take possession of this land already within the possession of an independent court of co-ordinate jurisdiction, was without authority or warrant of law. While the proceedings in the state court were pending, it was wholly unjustifiable to seek to dispossess that court through the instrumentality of a proceeding in another court, intended to draw into question the validity or regularity of the proceeding in the state court. Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570.

2. The injunction restraining the execution of the decree of the state court was equally unwarranted, and was in violation of the provisions of section 720 of the Revised Statutes of the United States. That the land ordered to be sold was property of the suitor invoking the injunctive process of the United States court is no justification. The binding force of that very wise and conservative statute does not depend upon the real or ultimate rights of the respective claimants

of the property involved, or the regularity of the proceedings sought to be stayed. The statute prohibits any injunctive restraint upon the proceedings of a state court, and jurisdiction is not conferred by vigorous allegations touching the injustice or invalidity of the objectionable proceedings. Freeman v. Howe, 24 How. 450; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Buck v. Colbath, 3 Wall. 334; Association v. Hurst, 16 U. S. App. 325, 7 C. C. A. 598, and 59 Fed. 1. In the latter case this court had occasion to consider and construe this statute and the cases cited above, and, touching them, said:

"The principle is that, in order to preserve the dignity and protect the effectiveness of the process of courts of concurrent jurisdiction, and to avoid unseemly conflicts between them, and between their respective executive officers, no remedy of an injunctive or dispossessory character will be afforded by one court against the acts of the executive officers of the other court, when done under color of an order or process issuing from such other court, because it would have the inconvenient and anomalous effect to stay the proceedings in one court to allow another court to investigate the validity of acts done under such proceedings."

3. But assuming the appointment of receivers and the awarding of injunctive process to have been unwarranted, and that neither had the effect of dispossessing the state court of the possession of the res, it does not follow that the question of the superiority of the lien thus acquired by Folsom over the rights of the mortgagee in the same land might not be drawn within the jurisdiction of the federal court by an ancillary proceeding, such as that now in question. The mortgagees were not parties to the state proceeding, and therefore not concluded by it, so far as their rights as mortgagees were affected thereby. If we assume that the decree of the state court was valid, and conclusive upon the Magnatite Iron Company and its vendee, the East Tennessee Mining Company, both of whom were parties to that decree, a mortgagee claiming under a mortgage made prior to that suit would not be concluded, so far as a priority over the mortgage was asserted, by virtue thereof. The mortgagee might have intervened in the chancery court suit, but was not obliged to do so. Whenever the property passed out of the control and possession of the state court, the mortgagee might contest the priority of the lien or title dependent upon the state proceeding. This might be done by proper ancillary proceedings in the pending foreclosure suit, wherein it was sought to sell the property mortgaged free from all liens and charges. Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590; Trust Co. v. Condon, 31 U. S. App. 387, 14 C. C. A. 314, and 67 Fed. 84; Compton v. Railroad Co., 31 U. S. App. 486, 15 C. C. A. 397, and 68 Fed. 263. The defect in the jurisdiction, as a consequence of the possession of the attached property by the state court, must be regarded as obviated by the substitution of a bond for that property. This substitution was not objected to below, and is not a subject of complaint here. The record before us is an abbreviated one, and we assume that this substitution was by consent. The legal effect was to place the circuit court in complete and rightful possession of the property theretofore in the rightful control and possession of the state court, and worked an abandonment by Folsom of any right to proceed further in the execution of the state decree.

4. This brings us to the consideration of the only material question in respect of the priority of Folsom's lien. The ground upon which his right to subject the property involved to the satisfaction of his debt was that the conveyance by his debtor to the East Tennessee Mining Company had been improperly and illegally admitted to registration, and was therefore inoperative, under the Tennessee registration statutes, as to creditors of the vendor. No question is made as to the illegality of the acknowledgment of that deed, and its illegal registration is admitted. The contention of counsel for appellant is that Folsom's debt was created after he had actual notice of the sale and conveyance, and that the deed, though unregistered, was operative as between the parties, and as to any creditor who extended credit with actual knowledge of the unregistered deed. The Tennessee statute on the subject of registration, so far as here involved, is found in sections 2887, 2890, Mill. & V. Code Tenn. By section 2887 it is declared that:

"All of said instruments shall have effect between the parties to the same and their heirs and representatives without registration, but as to other persons not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided."

And by section 2890 it is provided that:

"Any of said instruments not so proved or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors or bona fide purchasers from the makers without notice; and in the case of marriage contracts, shall be void as to existing or subsequent creditors of the husband, or purchasers from him without notice."

These sections are carried into the Code from the Tennessee act of 1841–42, c. 12, § 2. We learn from the Tennessee decisions that the registration acts have been several times amended, and the occasion of much litigation. In one particular the various acts have had a uniform construction, and that is that while a purchaser has not been protected against an unregistered conveyance unless he was a bona fide purchaser without notice, a creditor of the grantor is not affected by such unregistered instrument, even though he had notice of its existence. Washington v. Trousdale, Mart. & Y. 388; Douglas v. Morford. 8 Yerg. 373; Williams v. Walton, Id. 387; Lillard v. Ruckers. 9 Yerg. 73; Copeland v. Bennet, 10 Yerg. 355–358; Green v. Goodall, 1 Cold. 413. In Lillard v. Rucker, cited above, the court said that, under the earlier registration acts of 1784 and 1801, it had been decided by judicial construction that the—

"Deed took effect without registration, as between the parties to the deed, But it has been as clearly settled that if a creditor have notice of such parol gift, or such unregistered deed. he is not affected by it. The same point is ruled in Virginia, in Gay v. Moseley, 2 Munf. 545."

In Copeland v. Bennet the question was one of priority between a mortgage and a bill of sale, the mortgagee having notice at the time he registered his instrument of the prior, unregistered bill of sale. Touching the effect of such notice, Turley, J., for the court, said:

"But it is said that the complainants, at the time they registered their mortgage, had notice of Bennet's bill of sale, and that they are therefore bound by it. This is not the law. The complainants were not subsequent purchasers, and this principle applies to none other. If Bennett's bill of sale had been

registered first, and he had had notice of the existence of the complainants' mortgage, he would have been bound thereby, as a subsequent purchaser. For the statute above referred to provides that any deed of conveyance, bill of sale, or other instrument, which shall be last executed, but first registered, shall have preference, unless it is proven in a court of equity that such subsequent purchaser had full notice of the previous conveyance."

The distinction between the effect of an unregistered conveyance upon a purchaser or creditor affected with notice, which was recognized and maintained under the various registration acts preceding the one now involved, is a distinction preserved most distinctly by section 2890, cited above. By the very unambiguous language of that section, unregistered instruments are expressly declared to be "null and void as to existing or subsequent creditors, or bona fide purchasers from the maker. without notice." "Without notice" qualifies bona fide purchasers, and is not grammatically a qualification of the words preceding. The effect of a nonregistration of ·a conveyance under the statutes of Mississippi came before the supreme court of Tennessee in Lally·v. Holland, 1 Swan, 396–403. The Mississippi statute provided that conveyances recorded should be valid, "as to all subsequent purchasers for valuable consideration without notice, and as to all creditors," only from the time they were proved or acknowledged, and delivered to the clerk of the proper court to be recorded. The defendant claimed a part of the proceeds of· the property which had been conveyed by an unregistered instrument as a bona fide purchaser without notice, and the remainder as an attaching creditor. It was insisted that he was protected as an innocent purchaser to the extent only of the balance due him upon the mortgage, and that, as to the surplus over and above his mortgage debt, the complainants were entitled to a decree. The court, after saying that the principle appealed to would be effective "but for the different rule introduced by the registry act of Mississippi, as well as of this state and most ·of the other American states," added:

"By the positive enactment of the statute of Mississippi before referred to, registration is as indispensable in order to give effect and validity to the instrument as respects 'all creditors' as it is in respect to 'all subsequent purchasers for valuable consideration without notice.' As to both classes of persons, the conveyance is a nullity till properly registered. Until then the property remains in the conveyor, as to his creditors, and may be proceeded against as such by them. And creditors have this vantage ground, which subsequent purchasers cannot occupy,—that the former are not affected by actual notice of a prior conveyance, if unregistered, or not properly registered. It follows, therefore, that the complainants are repelled, upon this ground, by precisely the same reason which repels them upon the other ground."

In Lyle v. Longley, 6 Baxt. 286; a creditor of one William Lyle filed a bill in the chancery court, charging an indebtedness, and stating grounds for an attachment. Under that bill a tract of land was attached as the property of the debtor, Lyle. It turned out that Lyle had sold the property theretofore, and executed a title bond, which had not been registered. It was insisted that a creditor attempting to reach an equitable right of his debtor is restricted to the equities of that debtor, and could obtain no higher right, and that the attachment must be subject to the equitable

rights of a purchaser of the property, who had bought and paid for the land.    To this, McFarland, J., for the court, said:

"A creditor seeking to reach an equitable right of his debtor is restricted, of course, to these equities, and can obtain no higher right; but under the registration laws the sale by Lyle to Simmerly was void, as to Lyle's creditors, for want of registration. The result of this is that Lyle's creditors could treat the land as Lyle's, as if there had been no such sale, and in a case of this character a creditor can obtain a higher right than his debtor would have had. Even if Koehler & Co. had notice of the sale, which does not appear, they were not affected by it, although a subsequent purchaser would be. A creditor is not affected by notice. Section 2075 of the Code; [Stanley v. Nelson] 4 Humph. 484."

To the same effect is the case of Coward v. Culver, 12 Heisk. 540.

The question is one of Tennessee law, and involves the construction of a Tennessee statute. The construction of the statutes of other states is of no consequence. If the highest court of Tennessee has construed this statute, it is the duty of this court to follow that construction.   Under section 2890 of the Tennessee Code, every such conveyance, not duly registered, is null and void, as to creditors of the grantor, irrespective of actual notice.   As to a creditor, existing or subsequent, the property remains the property of the grantor, and is subject to levy of execution or attachment.   The subsequent conveyance of the property by the vendee holding under such an unregistered deed does not affect the creditors of the original grantor.   As to them the property continues to be the property of their debtor, until his conveyance shall be duly registered.   The "creditor" referred to in section 2890 is not alone one who is such by judgment.   The lien of an attachment has the same effect, both at law and in equity, as judgment and execution liens; and a creditor without judgment, who obtains an attachment and levies it upon the land of his debtor, claimed by another under an unregistered deed, secures thereby a lien, which he may ripen into a title by subsequent decree, or sale under execution.   This has been expressly so ruled by the Tennessee supreme court.   Parker v. Freeman, 2 Tenn. Ch. 612-614; Lyle v. Longley, 6 Baxt. 286.   There is no evidence whatever of any collusion, fraudulent or otherwise, between Folsom & St. John and the Magnatite Iron Company. It is true that the legal services which were rendered by the former to the latter were rendered after the conveyance to the East Tennessee Mining Company, and after knowledge thereof.   That credit was extended with any view of defeating the conveyances, or for any other fraudulent purpose, is not supported by any circumstance. The contention that the statute should be so construed as to make an unregistered deed null and void only as to creditors who become such in ignorance of the unregistered deed would be to do violence to the plain meaning of the positive terms of the statute, and impose a construction upon that section not warranted by the long line of Tennessee decisions which have held a creditor to be unaffected by notice.   The decree must be affirmed, with costs.