AULTMAN & TAYLOR CO. v. BRUMFIELD, Treasurer.

(Circuit Court, N. D. Ohio, E. D. May 31, 1900.)

No. 5,901.

1. COURTS—CONFLICT OF JURISDICTION—INJUNCTION—INTERFERENCE WITH PROCEEDINGS IN STATE COURT—CONSTITUTIONAL LAW.

An action having been brought for the recovery of a back assessment, and the taxpayer having appeared therein, he commenced an action in a federal court to enjoin the treasurer from proceeding in said action in the state court, on the ground that the statutes under which he acted were in conflict with the fourteenth amendment to the United States constitution, providing that "no state shall deprive any person of life, liberty, or property without due process of law." *Held*, that the bill must be dismissed, since the exercise of such power is expressly forbidden by Rev. St. U. S.

§ 729, providing that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state.

**2. SAME—CIVIL RIGHTS ACT.**

Rev. St. U. S. § 720, prohibiting the issue of injunctions by the federal courts to stay proceedings in a state court, is not so far modified or repealed by section 1979, providing that every person who, under color of any statute of any state, causes any citizen of the United States to be subjected to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law or suit in equity for redress, as to permit a federal court to entertain a bill to restrain a county treasurer from proceeding in an action in a state court for the recovery of a judgment for a back assessment upon the personal property of complainant, although in the proceeding in which such prima facie case was made the requirement of due process of law was not observed, contrary to the fourteenth amendment to the United States constitution.

**8. SAME—QUESTIONS ARISING UNDER UNITED STATES CONSTITUTION—REMEDY.**

Where the defense to an action in a state court involves the construction and application of the fourteenth amendment to the United States constitution, but defendant cannot remove the suit to the circuit court of the United States, because the federal question does not appear upon the face of plaintiff's statement of his claim, and the right set up under the constitution is denied to him by the highest court of the state to which the controversy can be carried, defendant's remedy is to sue out a writ of error from the supreme court of the United States, and thus obtain a review of the federal question involved.

Wm. A. Lynch, Harter & Krichbaum, Bell & Brinkerhoff, Cummings & McBride, and Bricker & Workman, for complainant.

Brucker & Cummins, Douglass & Mengert, and J. B. Jones, for respondent.

Before LURTON, Circuit Judge, and RICKS, District Judge.

LURTON, Circuit Judge. The complainant is a manufacturing corporation organized under the laws of Ohio. The respondent is a citizen of the state of Ohio, and is the treasurer of Richland county, Ohio. In January, 1899, the auditor of Richland county, acting under sections 2781 and 2782 of the Revised Statutes of Ohio, made a back assessment against the complainant corporation upon personal property alleged to have been omitted from its tax returns for the years 1893, 1894, 1895, 1896, 1897, and 1898. The aggregate of the back assessment for the several years, with penalties, amounts to more than $250,000. These assessments were certified by the auditor to the county treasurer, who placed them for collection upon the personal tax duplicate of the county. Two courses were then open to the treasurer for the collection of the tax thus assessed. He might have issued a distress warrant under section 1095 of the Revised Statutes of Ohio, or he might bring an action at law against the tax debtor in the court of common pleas for the recovery of a judgment against him, as provided by section 2859 of the Revised Statutes of Ohio. If he resorted to the first course, and the taxpayer had reason to believe that the assessment was illegal, it was open for the latter to enjoin the collection of the tax, under section 5848, Rev. St. Ohio. Whitbeck v. Minch, 48 Ohio St. 210, 31 N. E. 743; State v. Jones, 51 Ohio St. 492, 517, 37 N. E. 945; Railroad Co. v. Wagner, 43 Ohio St. 75, 1 N. E. 91; Groesbeck v. City of Cincinnati, 51 Ohio

St. 365, 37 N. E. 707. The county treasurer, in respect to the back tax assessed against complainant, did not resort to a distress warrant, but instituted suit in the common pleas court of Richland county, Ohio, and sought to recover judgment against it, and to collect same by execution. Section 2859, Rev. St. Ohio, provides that, in a suit against a tax debtor assessed under sections 2781, 2782, Id., "the tax duplicate shall be received as prima facie evidence on the trial of said suit of the amount and validity of such taxes appearing due and unpaid thereon." The complainant was duly served with process, and required to appear and defend the said suit, and did so appear and plead. In this situation, and while said suit was pending and undecided, this bill was filed. The complainant in its bill denies that it had omitted to make true returns of its personal property subject to taxation for either of the years for which it has been back assessed, denies that it made false returns, and, in the most strenuous terms, avers that the assessment thus made by the county auditor was unjust, arbitrary, and illegal. It also sets out certain matters which occurred in the auditor's office pending his action, which operated to mislead complainant as to the purpose of the auditor, and by which it was cut off from making a full defense.

Section 1071, Rev. St. Ohio, provides that the county auditor shall receive, as compensation, 4 per centum of any taxes collected and paid into the county treasury on property omitted, and placed by him upon the tax duplicate, under sections 2781 and 2782, already cited. Complainant avers that, in a proceeding started before the auditor by the tax inquisitor for the correction of the return of a taxpayer for the purpose of back-assessing omitted property, the county auditor acts in a quasi judicial capacity, and is required to hear and weigh evidence, and decide all questions of both fact and law in issue between the tax inquisitor and the taxpayer. Upon this premise complainant avers that sections 2781 and 2782, under which the county auditor can alone act, are in conflict with that provision of the fourteenth amendment to the constitution of the United States, which provides that "no state shall deprive any person of life, liberty or property without due process of law." In short, the contention is that the county auditor is given a direct interest in finding against the supposed delinquent taxpayer, and no compensation if he finds for him, and that an assessment which results from the prejudiced or interested action of the county auditor is not "due process of law." Upon the theory that the law of Ohio, under which these assessments were made, is obnoxious to the constitution of the United States, as not providing for due process of law, the complainant has sought the interposition of a court of the United States.

The objection thus made to the competency of the county auditor, by reason of the mode in which he is compensated, was presented to the supreme court of Ohio, and decided in favor of the validity of the law, in the case of Probasco v. Raine, 50 Ohio St. 378, 34 N. E. 536. The same question came before this court in Meyers v. Shields (C. C.) 61 Fed. 713, where the opinion was by RICKS, District Judge, where the law was held invalid, as not constituting due process. In Meyers v. Shields, cited above, the jurisdiction of this court was clear. The

bill in that case was filed before jurisdiction had attached in any state court, and no question arose as to the power of this court to enjoin an action in a state court for a judgment upon the back assessment there complained of. Neither was there any doubt as to the efficiency of a remedy in this court which did not include an injunction against a prior and pending suit in a court of the state in which the validity of the same assessment was involved. The views of Judge RICKS, as to the invalidity of sections 2781 and 2782 of the Revised Statutes of Ohio, are fully expressed in his opinion in Myers v. Shields, cited above, and to the opinion there announced he still adheres; but, in the view we have as to the equitable jurisdiction of this court to grant any practical or efficient relief without enjoining the pending suit in the court of common pleas, we find it unnecessary to consider the merits of the case, or pass formally upon the constitutional question upon which the jurisdiction of this court is invoked.

The prayer of the complainant's bill is that the defendant, who, as treasurer of Richland county, is the plaintiff in the action now pending in the court of common pleas, be enjoined and perpetually restrained from proceeding with his said action, and from in any manner collecting, or attempting to collect, the tax so assessed against the complainant. An injunction pendente lite was granted by one of the judges of this court upon the filing of the bill, by which the action of the state court has been stopped, and issues have been made upon all the questions of fact and law upon which the justice or validity of the tax assessed depends. The case comes on now for a final hearing, and also upon preliminary motions by the defendant to dissolve the interlocutory injunction, and to dismiss the bill for want of jurisdiction in consequence of the prior jurisdiction acquired by the court of common pleas.

It is very plain that unless this court can stop the proceeding in the state court, and draw to itself jurisdiction over the whole subject, no efficient relief can be afforded the complainant. But this is precisely what this court is forbidden to do by section 720 of the Revised Statutes of the United States. That section is as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This section is from the judiciary act of 1793. In view of our complex system of governments and courts, it gives legislative sanction to a rule of action long recognized by courts of concurrent jurisdiction, that a court first acquiring jurisdiction shall retain it, and decide every question which occurs in the cause, and that the right to exercise such jurisdiction will not be taken away by proceedings subsequently started in another court. Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841. "These rules," said Mr. Justice Grier, in the case cited above, "have their foundation, not merely in comity, but on necessity; for if one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable to a process for contempt in one, if they dare to proceed in the other." The

statute has many times been given application, and the necessity for its observance impressed upon subordinate courts. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Diggs v. Wolcott, 4 Cranch, 179, 2 L. Ed. 587; Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345; Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 640; Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1. It is true that there are cases in which an injunction has been sanctioned in which proceedings in a state court have been stayed, but it will be found, upon examination, that in every such instance the injunction was for the purpose of protecting the subject-matter of the litigation over which the court issuing the injunction had first acquired jurisdiction. French v. Hay, 22 Wall. 250, 24 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Providence & N. Y. Steamship Co. v. Hill Mfg. Co., 109 U. S. 578, 599, 600, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038; Moran v. Sturges, 154 U. S. 256, 270, 14 Sup. Ct. 1019, 38 L. Ed. 981; Iron Mountain R. Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113. There can be, of course, no pretense that the jurisdiction of this court first attached, or that there is, in any true sense, any jurisdiction over any res which has been or may be interfered with by the common pleas court.

But it is said that the complainant has been subjected to the deprivation of certain rights and immunities secured by the constitution for the protection of their property, and that a tax has been placed upon the tax duplicate of the county which, in any court, is at least prima facie evidence of the validity and amount of the tax, and of the fact that it is due and unpaid, and that the proceeding by which this prima facie case of liability has been constructed was a proceeding in which the requirement of due process of law was not observed, and that this bill is an action in which complainant invokes the protection of the courts of the United States against the deprivation of the rights guarantied to it by the fourteenth amendment of the constitution. But if it is plain that no efficient relief can be granted to the complainant under such a bill, unless the court can stop the proceeding in the state court, and draw to itself original jurisdiction to hear and determine the issues presented by the bill, we are still confronted with the positive provisions of section 720, forbidding an injunction against a proceeding in a state court.

In Live-Stock Dealers' & Butchers' Ass'n v. Crescent City Live-Stock Landing & Slaughter-House Co., 1 Abb. U. S. 388, Fed. Cas. No. 8,408, a bill was filed in the circuit court of the United States which, among other things, sought to enjoin the defendant from prosecuting certain pending suits in the state courts based upon alleged violations by the complainant of the privileges of the defendant company under a law of the state which secured to it a monopoly of the business of slaughtering cattle in a district including the city of New Orleans. The complainant claimed that the state law under which the slaughter-house company was organized, and under which its monopoly was secured, was violative of the rights and privileges secured to it, as a citizen of the United States, by the fourteenth amendment. The case was heard before Bradley, circuit justice, and Woods, then circuit judge. The court construed the fourteenth

amendment in accordance with the contention of the complainant, and held that the right to engage in any lawful employment in a lawful manner was a fundamental right guarantied by the fourteenth amendment, which had been violated by the law of Louisiana, which granted a monopoly of the business of slaughtering to the defendant corporation. But, when it came to enjoining the suits pending in the courts of the state against the complainant, the great justice said:

"The objection that the circuit court of the United States cannot enjoin proceedings in the state court is an objection which cannot be surmounted. The fourteenth amendment authorizes congress, by appropriate legislation, to carry its provisions into effect. Congress, in the exercise of the power thus given, would undoubtedly have the right to authorize the federal courts to take jurisdiction of cases of this sort, and to enjoin proceedings in the state courts, as well as proceedings in the federal courts. But congress has not as yet assumed that jurisdiction, and therefore the courts are left to the provisions regulating the proceedings of the United States courts passed 70 or 80 years ago. Section 3 of the act of 1793 declares that no writ of injunction shall be granted to stay proceedings in any court of a state. This act has never been repealed. The court, therefore, feel compelled to refuse the injunction to restrain the defendants from proceeding with the legal remedy which they have instituted in the state courts. The remedy of the parties is to allow the proceedings to pass to judgment, and, if the highest court of the state should decree against the construction of the fourteenth amendment which is claimed by them, and which this court has assented to, then they can carry the case up by writ of error to the supreme court of the United States, and have the whole question reviewed."

But it has been urged that section 720 has, by implication, been repealed or modified so far as it would prevent the full exercise of jurisdiction under section 1979 of the Revised Statutes. That section reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

This section was part of the act of April 20, 1871, being the act entitled the "Civil Rights Act." The section in question is in the nature of a declaratory law, giving a right of action to every person who has been subjected to the deprivation of any right, privilege, or immunity secured by the constitution or laws of the United States, against the person who has subjected the plaintiff to the loss of the right or immunity so secured. It does not deal with the question of jurisdiction, and in no way refers to the court within which such action is to be brought. It is impossible to see any ground upon which it can be held that section 720 is in any way affected.

It is true that in Tuchman v. Welch (C. C.) 42 Fed. 548, 557, the court did express the opinion that section 720 was repealed by this section, so far as it would prevent redress for the party whose rights or privileges had been obstructed by state legislation conflicting with the provisions of the fourteenth amendment. The opinion expressed by Judge Phillips was purely dictum, as the case involved

no such question, and the view taken by him has not received the sanction of any court to which we have been referred.

In Hemsley v. Myers (C. C.) 45 Fed. 283, 289, the effect of section 1979 upon section 720 came directly before Caldwell, circuit judge, who, speaking of section 720, said:

"This section, save the exception, is as old as the judicial system of the United States. Its prohibition is absolute and unqualified, except where the injunction is authorized by law in proceedings in bankruptcy. This exception serves to emphasize the prohibition as to all other cases. In cases where the jurisdiction of the court of the United States first attaches, the statute has no application; but in the cases we are considering the jurisdiction of the state courts first attached, and that fact, independently of the statute, according to a well-settled rule, is a bar to the jurisdiction of this court. To the observance of the rule enunciated by this section, and other cognate rules, we are indebted for the almost uniform harmonious relations that have existed between the state and the United States courts from the foundation of the government down to the present time. The rule would have probably been the same independently of the statute. The state courts observe the rule towards the courts of the United States upon principle, and without any statute requiring them to do so. It is not merely a rule of comity, but an absolute rule of law, obligatory on the courts of both jurisdictions, and absolutely essential to the maintenance of harmonious relations between the state and the United States courts, and indispensable to the due and orderly administration of justice in both. Appeals may be taken in certain cases from the state courts to the supreme court of the United States, and in this way suitors claiming a right or privilege under the constitution of the United States, or an act of congress, or a treaty, may have the validity of their claim finally determined by the supreme court of the United States; but the district and circuit courts of the United States possess no appellate or supervisory jurisdiction over the state courts. The circuit courts of the United States and the state courts are each destitute of all power either to restrain or review the process or proceedings in the other. This rule has had the approval of the courts, lawyers, legislators, and laymen from the beginning of our system of government. The rule commends itself to the common sense of all mankind, and there can be no higher evidence of the soundness of a rule of law than that there is a universal consensus of opinion that it is sensible and just. The contention of the counsel for the plaintiffs is that the statutes and rules of law which have been adverted to, and which, in the opinion of the court, preclude it from exercising jurisdiction in these cases, have been repealed or abrogated, either wholly or partially, by section 1979 of the Revised Statutes of the United States, first enacted as a part of the civil rights bill, April 20, 1871. And the learned judge who delivered the opinion of the court on the motion for a temporary injunction seems to entertain the same view. The section reads as follows: 'Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.' The provision in the section, as originally enacted, conferring jurisdiction on the district and circuit courts of the causes of action enumerated in the section, has been transferred to the head of jurisdiction of those courts, respectively. The section does not repeal, limit, or restrict the previously existing rules affecting the relations of the state and the United States courts, nor does it abolish the distinction between law and equity, or change the rules of pleading or mode of proceeding in any respect. If the section was stricken out of the statute, the rights, privileges, and immunities of the citizens under the constitution and laws would remain to them, and the mode of seeking redress for a deprivation of these rights would be the same that it is now. The section declares that the mode of proceeding to obtain redress for a deprivation of

these rights shall be by 'an action at law, or a suit in equity, or other proper proceeding for redress.' If the case is one which, under the well-understood rules of pleading, is cognizable only at law, then an action at law is the 'proper proceeding for redress'; and, if it is one cognizable only in equity, then a suit in equity is the 'proper proceeding for redress.' No new mode of proceeding is enacted. and no new right created by this section. As it now stands in the Revised Statutes, it may be properly denominated a 'declaratory' statute. And the statutes and rules of law defining and regulating the powers, relations, and jurisdiction of the state and the United States courts with reference to each other are not affected by this section in the slightest degree. The demurrer to the bill is sustained, the temporary injunction dissolved, and the bill dismissed for want of equity."

In Moore v. Holliday, 4 Dill. 52, Fed. Cas. No. 9,765, the bill, among other things, sought to enjoin certain suits pending in courts of the state for the collection of taxes imposed by the state in violation of a supposed contract for a different mode of taxation. Touching this aspect of the relief sought, Dillon, circuit judge, said:

"So far as the bill in this case asks to enjoin suits already brought and now pending in the state courts, to enforce the collection of any of the taxes complained of, it is sufficient to remark that an express statute of the United States has prohibited such interference since the act of March 2, 1792, re-enacted in section 720 of the Revised Statutes."

In Rensselaer & S. R. Co. v. Bennington & R. R. Co. (C. C.) 18 Fed. 617, 618, it was sought to enjoin a suit in a state court upon the ground that the act upon which the suit was brought was a state statute which was void as in conflict with the constitution of the United States. The relief was denied, Judge Wheeler saying:

"The rights of citizens of other states to have their litigation generally, and the rights of all to have federal questions, tried in the federal courts, are provided for by the statutes relating to the removal of cases from the state to the federal courts, and to writs of error from the supreme court of the United States to the highest courts of the state, and are not left at all to be effectuated by injunction from one court to the other."

Similar conclusions were reached as to the effect and construction of section 720 in Railroad Co. v. Scott (C. C.) 13 Fed. 793; Dillon v. Railway Co. (C. C.) 43 Fed. 109.

In Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1, the circuit court of appeals for this circuit affirmed District Judge Barr in denying an injunction against a sale of land by a sheriff under an execution from a state court on a sale bond filed against sureties, although the land levied upon belonged to a stranger to the proceeding. Speaking of section 720, which prohibited an injunction against "any proceeding in any court of the state," Taft, circuit judge, speaking for the court, said:

"That section was passed. not to preserve comity and harmonious action between courts of the same sovereign exercising concurrent jurisdiction, but to attain such an end, and prevent unseemly conflict between courts of different sovereigns exercising concurrent jurisdiction over the same territory. The purpose of the statute is so important that a liberal construction should be given to accomplish it."

A repeal or modification of section 720 should not be lightly presumed. To preserve harmony and comity between the courts of the United States and those of the state, it is essential that it shall be observed in its spirit as well as in its letter. Under the act of 1875,

as amended by the act of August 13, 1888, the circuit courts of the United States are given original jurisdiction, "concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity,  *  *  *  arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority." So, any suit of which original jurisdiction is given may be removed by the defendant from a state court to the circuit court of the United States.

But it is well settled that, although the decision of a case pending in a state court may depend upon the construction and application of the constitution of the United States, the suit is not removable by the defendant unless the federal question appears on the face of the plaintiff's pleadings. If it does not so appear from the plaintiff's statement of his own claim, the want cannot be supplied by any pleadings filed by the defendant. Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Galveston, H. & S. A. R. Co. v. Texas, 170 U. S. 226, 18 Sup. Ct. 603, 42 L. Ed. 1017.

The remedy of a defendant in a suit in which the decision must turn upon the construction or application of the constitution of the United States, where the federal question is not disclosed by the plaintiff's statement of the case, is to present the question by his pleadings, and, if the right thus set up under the constitution or laws of the United States is denied to him by the highest court of the state to which the controversy can be carried, he may sue out a writ of error from the supreme court of the United States, and thus obtain a review of the decision of the state court upon the federal question directly involved. It would be strange, indeed, if a defendant to an action in a state court, whose defense involved the construction and application of the constitution of the United States, but who could not remove the suit because the federal question did not appear upon the face of the plaintiff's statement of his claim, should have the right to transfer the case to a court of the United States by an independent injunction bill, whereby the state court should be deprived of jurisdiction, and the decision of the same question drawn into the United States court. The provisions for a review by writ of error afford to the complainant ample means for obtaining redress, if in fact it has been subjected to the deprivation of rights secured to it by the provisions of the fourteenth amendment. The conclusion we reach is that this court can grant no efficient or practical relief without it can enjoin the pending suit in the state court and draw to itself the decision of all the questions involved by the defense which can be there presented. This we cannot do without violating the plain terms of section 720. The injunction heretofore granted must be dissolved, and the bill dismissed for want of equitable jurisdiction, but without prejudice to the right of complainant on the merits of the case.