PHELPS et al. v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court of Appeals, Sixth Circuit.   December 3, 1901.)

### No. 955.

1. JUDGMENT—COLLATERAL ATTACK—WANT OF JURISDICTION OVER DEFENDANT.
   Where a defendant appears for the purpose of challenging the jurisdiction of the court, and puts in issue the sufficiency of the service made, the decision of the court upon that issue is conclusive, unless reversed by some other court having power of review; and, where the sufficiency and validity of the service is sustained, the judgment subsequently rendered in the cause cannot be collaterally attacked for want of jurisdiction over the defendant.

2. COURTS—SCOPE AND EXTENT OF JURISDICTION—ANCILLARY PROCEEDINGS FOR ENFORCEMENT OF JUDGMENT.
   The jurisdiction of a court of record, once acquired in a cause by the service of process, is not exhausted by the rendition of judgment therein, but continues until such judgment is satisfied, and includes the power to issue all proper process and to take all proper proceedings for its enforcement.

3. SAME.
   A state court rendered judgment against a nonresident insurance company, having acquired jurisdiction by the service of process on defendant's agent within the state. An execution having been returned nulla bona, plaintiff filed a pleading setting up that defendant had a number of policy holders within the state from whom premiums or dues were payable at certain intervals, and that for the purpose of preventing the service of process upon it, and of removing its property from the reach of the courts of the state, it had canceled the authority of all its agents in the state, and directed its policy holders to remit the payments due from them to its general office; and the pleading prayed the appointment of a receiver to impound such payments to be applied on plaintiff's judgment.   Held, that the filing of such pleading was not the institution of a new and separate action, requiring the service of a summons on the defendant, but a proceeding ancillary to the judgment, and for its enforcement, which the court had power to entertain by virtue of its previously acquired jurisdiction over the subject-matter and of the parties.

4. SAME—APPOINTMENT OF RECEIVER—NECESSITY OF NOTICE.
   While it is the general rule that, even after judgment, the appointment of a receiver should not be made without notice to defendant, the rule is not so inflexible as to prevent the court from proceeding where the defendant has rendered it impossible to give legal notice; and where such receiver is sought in aid of the enforcement of the judgment, the court has jurisdiction by virtue of the process originally served to determine whether further notice is necessary to the granting of the supplemental relief asked, and its decision thereon, whether based upon its general powers as a court having both common law and equity jurisdiction, or upon a state statute, cannot be collaterally attacked.

5. FEDERAL COURTS—ENJOINING PROCEEDINGS IN STATE COURT—ALLEGED WANT OF JURISDICTION OF STATE COURT.
   Under Rev. St. § 720, providing that, except when authorized by a bankruptcy law, "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state,"

a federal court is not authorized to enjoin a receiver, appointed by a state court having concurrent jurisdiction of the subject-matter, from acting under such appointment, where no priority of jurisdiction by the federal court is claimed, on the ground that the state court was without jurisdiction to make the appointment; nor is it material that the state court had, through its receiver, obtained only constructive, but not the actual, possession of the property.[1]

Appeal from the Circuit Court of the United States for the District of Kentucky.

For opinion below, see 103 Fed. 515.

This is an appeal from a decree continuing an interlocutory injunction. The case is briefly this: The appellee, the Mutual Reserve Fund Life Association, is a corporation organized under the laws of the state of New York. For many years it solicited insurance in the state of Kentucky, having complied with the law of that state in respect of the conditions upon which foreign insurance companies are permitted to do business in the state. As preliminary to being licensed, its board of directors passed a resolution consenting that service of process in suits brought against it in Kentucky might be made upon the insurance commissioner of the state, and that such service should be a valid service upon the association. October 10, 1899, the Kentucky insurance commissioner revoked all authority theretofore granted by his department, and all licenses granted to its agents to do business within the state. In this situation of things, suit was brought against the association, in the Jefferson circuit court, one of the courts of the state of Kentucky having both common law and equity jurisdiction, by James S. Phelps, one of the appellants. Phelps had for many years been a member of the association, and held a policy of life insurance therein. He claimed that the company had, without his consent, violated the terms and conditions of its contract with him, and, in effect, had annulled and canceled its agreement with him, by the imposition of new and illegal arbitrary conditions. He therefore sued to recover back the dues, premiums, and assessments paid by him theretofore, aggregating $1,994.20. Process issued against the said association, which was returned served upon the insurance commissioner of the state of Kentucky and upon one Ben Frese, who was described in the return as "the managing agent and chief officer and agent of the Mutual Reserve Fund Life Association found in this county." The association appeared specially, and solely for the purpose of challenging the sufficiency of this service of the writ of summons, and moved to quash the return. Upon this motion evidence was heard, involving the character of the agency of B. Frese, as well as the sufficiency of the service upon the state insurance commissioner after revocation of the company's license to do business within the state. Upon the evidence and exhibits, the circuit judge made a finding of fact and law which was, in substance: First, that the resolution of the board of directors of the association, consenting that service upon the Kentucky insurance commissioner of process issuing in any suit pending or which might be brought in the courts of the state should be a valid service, had never been revoked or canceled, and that the service of process in this suit upon the said commissioner was a good and valid service; second, that Ben Frese, at the time of service upon him, "was the local treasurer of the defendant association in Jefferson county, and as such was an agent of the company upon whom summons might be served." The motion to quash was accordingly overruled. The defendant declined to plead further, and judgment by default was rendered for the sum of $1,994, with interest on the various items from date of each payment, respectively. This judgment for the principal sum and interest aggregated $2,360. Execution issued which was returned "No property found." Thereupon the plaintiff in the said judgment by leave of court filed in the said Jefferson circuit court, and in the same case,

---

[1] Federal courts enjoining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 90, and Trust Co. v. Grantham, 27 C. C. A. 575.

a pleading styled an "Amended and Supplemental Petition." In this he set out the fact of his said judgment, and that execution had been duly returned "No property found," and that his said judgment was wholly unpaid. It was then in substance averred: That the said association, at the time its license to do business in the state had been withdrawn, had a great number of policy holders in the state, which policies were a large source of income to the association, and that it had continued to do business within the state by collecting dues, premiums, and assessments upon its said existing contracts, and that at stated times dues, premiums, and assessments became due from said Kentucky policy holders, which the company regularly demanded and received as a condition of keeping in force its said contracts. It was also averred that prior to December, 1899, such policy holders had paid all dues, premiums, and assessments to local collectors and treasurers, who were appointed at different places within the state for the purpose of receiving such dues, premiums, and assessments accruing to the association, but that since December, 1899, the authority of all such collectors and treasurers had been revoked, and the company's debtors and policy holders notified and required to forward all such dues, premiums, and assessments directly to the home office of the association, in New York. This method of doing business, the petition averred, was adopted for the purpose of evading the service of process within the state, while so still carrying on business in the state, and for the fraudulent purpose of removing its assets out of the state to evade the process of the law and the payment of local creditors, and particularly with the intent of preventing this plaintiff in the collection and realization of the amount due upon his said judgment. The prayer of the petition was in these words: "Wherefore, the plaintiff prays for a decree in aid of and in the enforcement of the judgment heretofore rendered in this court, and to this end plaintiff prays that a general attachment issue against the property of the defendant, the Mutual Reserve Fund Life Association; that the defendant and all persons now or heretofore connected with said defendant be required to appear before the commissioner of this court, and disclose any money, choses in action, equitable or legal interest, and all other property to which the defendant is entitled to or to which it has an interest; or, if it seems best to the court, the plaintiff prays that a receiver be appointed to take charge of the business, assets, and all other property of every kind and description which the defendant has in Kentucky or may hereafter obtain in this state; that all revenues and incomes accruing to the defendant from policy holders and other debtors be ordered paid to said receiver; and that so much as may be necessary of any money or property belonging to the defendant as may by any order or process come within the jurisdiction of this court be employed to the settlement and satisfaction of the judgment which the plaintiff holds against the defendant, as set forth and mentioned herein. Plaintiff prays for his costs in this action, and for all other relief, general, equitable, and special." The final judgment in favor of said James S. Phelps was rendered May 19, 1900. This amended or supplemental petition was filed August 4, 1900, and on the same day the said Jefferson circuit court made an order, entitled as in the original suit, directing that the petition be filed and the action transferred to the equity docket. By the same order the court appointed the appellant, the Fidelity Trust & Safety Vault Company, receiver for the Mutual Reserve Fund Life Association in Kentucky, and directed it to "collect and receive all moneys, debts, things in action, and credits now owing to or hereafter to accrue to the said Mutual Reserve Fund Life Association in Kentucky"; that the said receivers "shall take into possession all the revenue and income which has accrued or may accrue to the defendant from its business in this state and policy holders." It was further ordered that "all persons insured in said association and all other debtors of said association in Kentucky are now specifically ordered and directed to pay to the receiver herein appointed all dues, premiums, assessments, and whatever else of value may now be or hereafter become owing or due to the said defendant association." The receiver was authorized to employ counsel and to bring and defend all suits necessary to recover the assets of the association, and all persons were enjoined

from interfering with him in the custody, management, and control of the assets and rights "hereby impounded and placed in the hands of said receiver," who was directed to hold the same for the satisfaction of the judgment of said petitioner, Phelps, and of the costs and expenses of the receivership. It was directed that "when such judgment shall be paid, and such costs and expenses liquidated, the receivership provided for herein shall terminate." The receiver was further directed to make report from time to time of all his acts and proceedings. The receiver qualified on the same day by giving the bond required by the court. On August 22d, following, the said Mutual Reserve Fund Life Association, appearing for the sole purpose of filing a petition for the removal of said action, did file a petition praying the removal of said proceeding, which was described "as an equitable action apparently based or sought to be maintained upon the statutory authority of section 439 of the Code of Practice in Civil Cases, based upon a return" of nulla bona, etc. It was averred that the amount in controversy exceeded $2,000, being $2,360, with interest from May 18, 1900; that the petitioner was a corporation of the state of New York; and that the plaintiff in said proceeding was a citizen and inhabitant of the state of Kentucky. Bond, conditioned as required by law, was tendered. The application to remove was denied. Thereupon the said Mutual Reserve Fund Life Association, for brevity hereafter called the "Association," filed the present bill in the circuit court below; the said James S. Phelps, plaintiff in said judgment, and the Fidelity Trust & Safety Vault Company, a corporation of the state of Kentucky, being sole defendants. The averments of this bill were substantially the facts already stated, and need not be repeated. A duly-certified transcript of all the proceedings in the Jefferson circuit court was made an exhibit to said bill. It was further averred that said receiver so appointed had caused to be issued to all of the holders of policies residing in Kentucky notice of his appointment and of the order of the court requiring all dues, premiums, and assessments to be paid to him, and warning them that payments thereafter to the association would be ineffectual in respect to dues then or thereafter accruing. The judgment in favor of Phelps was asserted as null and void, for want of due notice and service of valid process. It was further averred that no notice of any kind or character had been given of the filing of the "amended and supplemental petition," under which a receiver had been appointed. This, it was averred, was a proceeding without due process of law, and in violation of the provisions of the fourteenth amendment. The object of the bill is fully shown by its prayer, which was as follows: "Your orator prays the aid of this honorable court, and that it may please your honors to grant unto your orator a writ of injunction commanding the said defendants, and each of them, and all persons claiming to act under their authority, or the authority, direction, or control of either of them, to absolutely desist and refrain from taking possession of or in any wise interfering with any of the assets or estate of your orator in the state of Kentucky, and from collecting or receiving any moneys, things in action, credits, income, or revenues now owing to or hereafter to accrue to your orator, and especially the dues, premiums, and assessments payable to your orator by its members by virtue of the terms of their certificates of membership, and from taking or instituting any action or other proceedings against said members, or any of them, to collect or realize such dues, premiums, or assessments, or to prevent them, or any of them, from paying over to your orator, according to the stipulations and provisions of their certificates of membership, all dues, premiums, and assessments payable according to the tenor thereof, until otherwise ordered by your honors, and that upon final hearing the injunction herein prayed be made perpetual." After notice and argument by counsel, the court below granted an interlocutory injunction in these words: "The defendants, James S. Phelps and the Fidelity Trust & Safety Vault Company, and all its officers and agents, are severally hereby enjoined and restrained from collecting or attempting to collect, and from reducing or attempting to reduce to possession, and from in any wise interfering with or claiming, any of the revenue or income of the complainant derived from any of the dues, assessments, mortuary calls, or premiums which have accrued or

which may accrue or be made upon any of the certificates of membership or policies of life insurance issued by complainant to any person or persons whatsoever; but the defendant James S. Phelps is left at full liberty to proceed otherwise to enforce against any other property or assets of the complainant any judgment he may have against the complainant by all lawful writs or processes as he may be advised." A motion to discharge this injunction was subsequently made and overruled, and from this order continuing this injunction this appeal has been prayed.

Zack. Phelps and Benjamin F. Washer, for appellants.

George Burnham, Jr., and Sewell T. Tyng (Pirtle & Trabue, of counsel), for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. The judgment in favor of appellant James S. Phelps, and against the appellee, the Mutual Reserve Fund Life Association, has been assailed because it is said that the Jefferson county circuit court did not obtain jurisdiction by the service of process upon Ben Frese as a local agent, or by the service upon the Kentucky commissioner of insurance. But the association appeared in the Jefferson court for the very purpose of putting in issue the sufficiency of that service. The determination of the issue thus made up involved questions of law and fact. The judgment of the state court contains these recitations:

"This action having heretofore been submitted upon a motion to quash the service of process, upon which motion the court made the following findings of law and facts, which are incorporated in and made a part of this judgment, to wit: First. Upon proof induced by affidavits, the court was and is of the opinion that Ben Frese at the time of service of summons upon him in this action was the local treasurer of the defendant association in Jefferson county, Kentucky, and as such was an agent of the company upon whom summons might be served, and the defendant association thereby brought before the court. By the summons herein upon the said Ben Frese, the defendant association was brought before this court in this action, and the jurisdiction of this court to grant the relief prayed for in the petition became vested. Second. It appearing, from proof induced by affidavits, that the defendant association did, by resolution of its board of directors adopted prior to the service of summons in this action, consent that service of process upon commissioner of insurance of this state, in any action brought or pending in this state, should and shall be a valid service upon said defendant association, and it further appearing to the court that the authority and power to receive service of process thus vested in the commissioner of insurance of Kentucky has never been revoked, canceled, or annulled, this court held and now holds that the summons served upon the commissioner of insurance of Kentucky in this action was a valid and sufficient service, and operated to bring the defendant association before the court, and subject said defendant association to the jurisdiction and decrees of this court in this action. This action having now been regularly set at rules and called by the court, and the necessary time for answer having elapsed without any action being taken by the defendant, the cause was regularly submitted for judgment. The court being advised by the uncontroverted allegations of the petition that the prayer of said petition should be granted, it is therefore ordered and adjudged that the plaintiff recover of the defendant the sum of nineteen hundred and ninety-four dollars ($1,994), with interest on the various amounts going to make up said sum from the dates of the payments of such various amounts to the defendant association, as shown by the itemized statement and account filed with the petition, amount-

ing in all to twenty-three hundred and sixty dollars ($2,360), with interest from this date, May 19, 1900, and that plaintiff further,recover of defendant his costs in this action expended, for all of which debt, interest, and costs the plaintiff may have immediate execution."

Having appeared for the purpose of challenging the jurisdiction of the court, the decision of the court upon that issue is conclusive, until annulled or reversed by some court having jurisdiction to revise and correct error. However erroneous the conclusions of the Jefferson circuit court may have been, and we intimate nothing in that respect, its judgment is certainly not void, and in a proceeding of this kind we must accept it as a valid and legal judgment; for neither the circuit court nor this court have any character of appellate or revisory jurisdiction over that court. The question is not one of waiver of personal jurisdiction by an appearance solely for the purpose of contesting that jurisdiction, but of the effect and force, in a collateral attack, of a judgment upon an issue involving the jurisdiction of the court over the person of a defendant, to which issue the present appellant was a party. The court below was therefore right in assuming the validity of the judgment, which was the foundation for the subsequent proceedings which led to the injunction here involved.

2. We are unable to agree with the opinion of the court below that the jurisdiction of the state circuit court was exhausted by the rendition of its judgment. The power to render that judgment included the power to issue all proper process to enforce its payment. The jurisdiction of the court over the controversy and over the parties, acquired in the primary case by service of process, continued until its judgment should be satisfied. This is a well-settled rule in respect to the jurisdiction of courts of record. Wayman v. Southard, 10 Wheat. 1, 22, 6 L. Ed. 253; Riggs v. Johnson Co., 6 Wall. 166, 187, 197, 18 L. Ed. 768; Covell v. Heyman, 111 U. S. 176, 183, 4 Sup. Ct. 355, 28 L. Ed. 390; Railroad Co. v. Gomila, 132 U. S. 478, 483, 10 Sup. Ct. 155, 33 L. Ed. 400. Riggs v. Johnson Co., cited above, is much in point. In that case a judgment had been rendered against Johnson county upon bonds. An execution was returned unsatisfied. The plaintiff then applied for a writ of mandamus to compel the levy of a tax under a law in force when the bonds were issued. The officials against whom the writ was directed replied that prior to the application for the writ of mandamus they had been enjoined by a state court from making any levy. This raised a question as to which of the two courts should be obeyed, and the decision was made to turn upon priority of jurisdiction over the controversy. In respect to, the power of the circuit court to issue a writ of mandamus. after judgment, and in aid of its enforcement, the court said:

"Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal that, if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. Express determination of this court is that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. Consequently a writ of error will lie when a party is aggrieved in the foundation, proceedings, judgment, or execu-

tion of a suit in a court of record. Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the constitution."

In answer to the argument that the state court had first obtained possession of the controversy by issuing its injunction before application made for the writ of mandamus, the court said:

"Unless it be held that the application of the plaintiff for the writ is a new suit, it is quite clear the proposition is wholly untenable. Theory of the plaintiff is that the writ of mandamus, in a case like the present, is a writ in aid of jurisdiction which has previously attached, and that in such cases it is a process ancillary to the judgment, and is the proper substitute for the ordinary process of execution to enforce the payment of the same, as provided in the contract. Grant that such is the nature and character of the writ as applied in such a case, and it is clear that the proposition of the defendant must utterly fail, as in that view there can be no conflict of jurisdiction, because it has already appeared that a state court cannot enjoin the process or proceedings of a circuit court. Complete jurisdiction of the case, which resulted in the judgment, is conceded; and if it be true that the writ of mandamus is a remedy ancillary to the judgment, and is the proper process to enforce the payment of the same, then there is an end of the argument, as it cannot be contended that a state court can enjoin any such process of a federal court."

In conclusion, the court held that the circuit court had not lost jurisdiction by the rendition of the primary judgment, and that the writ of mandamus was a writ ancillary to the judgment, and not a new suit, but proper process to enforce satisfaction of its primary judgment.

In the instance before us, the state court had acquired jurisdiction over the association by service of process upon its duly constituted agents. An execution had been returned "No property found." The court by a sworn petition was then advised that this nonresident judgment debtor had no property subject to execution, but that it was in the receipt at stated times of dues and premiums upon existing contracts of insurance, and that it had revoked the authority of all of its agents and collectors within the state, and was requiring all such accruing dues to be remitted directly to its home office by the policy holders themselves, and that this method of conducting its business in the state had been resorted to for the purpose of removing its assets beyond the jurisdiction of the state. In this situation, the court was asked to impound and sequester these choses in action, through means of a receiver, that they might be applied to the payment of this judgment. Manifestly, the action of the court in impounding property of the judgment debtor which could not be reached by execution was action auxiliary to the primary suit. The proceeding was not in any sense a new suit or a separate action. That which the court was asked to do, and that which the court did do, was to take a step in aid of the satisfaction of its judgment; and this it did as a proceeding ancillary to the judgment, and by virtue of its previously acquired jurisdiction over the subject-matter of the controversy and of the parties. Instead of ordering an alias fi. fa., or an attachment, it appointed a receiver, and directed him to take possession of the choses in action which apparently con-

stituted the only property of the debtor within the jurisdiction. This appointment was made without other than constructive notice. How, otherwise, could it be, if the averments of the supplemental petition were true? Was the court powerless because the judgment debtor was a foreign corporation, unrepresented by agents, and having no property subject to execution?

As we are advised by an opinion subsequently filed by the very learned judge of the state court, that court regarded a summons upon this supplemental proceeding as wholly unnecessary, because no new cause of action was presented therein, and because the judgment debtor was charged with constructive notice of all steps taken in the case after the original service in the primary action. Aside from any question of the sufficiency of constructive notice where, in the same case, a receiver is applied for, after judgment and a return of nulla bona, as a substitute for an alias execution, or an attachment, or other proper writ of process, we are not prepared to say that, if such a supplemental matter be regarded as a new suit or action, the constitutional requirement of due process is infringed if a receiver be appointed before notice. Doubtless the general rule is that, even after judgment, applications for appointment of a receiver should not be entertained without notice. Beach, Eq. Prac. § 730, and cases cited. "But," says the author, "the rule requiring notice is not so inflexible as to prevent the court from proceeding in cases where it is impracticable to give legal notice, as in the case of absconding or nonresident defendants, or in case of great emergency demanding the immediate interference of the court."

The ground upon which the court below proceeded was that there was no such vitality remaining in the primary suit as to justify any kind of supplementary proceeding. To quote the figurative, yet forcible, language of Judge Evans, "the whole so-called supplemental proceeding was an attempt to graft a living branch upon a dead stalk." For this reason, said the judge, "the filing of the supplemental petition and the action of the court appointing a receiver thereupon will be treated as nullities." The metaphor, as we have already seen, is not apt. The jurisdiction of the state court had not been exhausted by the rendition of its judgment; for, under well-settled rules of general jurisprudence, it continued for the purpose of enforcing satisfaction of that judgment.

We have not been cited to any decisions of the highest court of Kentucky, nor to any statutory provision, which conflicts with the view which Judge Toney, of the Jefferson circuit court, took as to the ancillary powers of his court. Counsel for appellees have cited two decisions as supporting the view of the court below. They are Brown v. Vancleave, 86 Ky. 381, 6 S. W. 25, and Meadows v. Goff, 90 Ky. 540, 14 S. W. 535.

Brown v. Vancleave was a proceeding by attachment against a nonresident copartnership, of which it was averred Brown was a member. The property attached was shares of stock belonging to Brown. Brown appeared and denied that he was a member of the firm which had made the notes in suit. This issue was found in Brown's favor; but the court held him liable for a part of the debt in

suit, because incurred at a time when he was a member of the firm sued. Judgment went against Brown accordingly. It was further ordered that, unless he paid into court within 10 days an amount sufficient to pay this judgment and costs, the attached shares should be sold. Brown complied, and paid in the sum necessary to satisfy the judgment against him. On the day he did this, the plaintiff filed an amended pleading, in which he sought to subject Brown's attached shares to the satisfaction of that part of the debt in suit for which Brown had been held not liable, upon the ground that Brown had permitted the firm of which he was not a member to pledge the attached shares for the payment of the firm's debts. The object was to tack this new cause of action onto the old suit, already decided, and thus hold on to the attached property. The Kentucky court of appeals held that this could not be done, as the rights of the parties had been litigated to a final judgment. The court, among other things, said:

"After a final judgment had been reached, and after it had been discharged according to the term prescribed by the court, the appellee filed an amended petition, in which he set up a new and distinct cause of action against the appellant. The cause of action thus set up was not designed to aid in effectuating the judgment already rendered, for that judgment had been satisfied; but it was designed to subject the appellant's property to the payment of the remaining portion of the two notes, for the payment of which he, according to the judgment of the court, was not bound. * * * It is thus seen that the amendment proposed a new and distinct cause of action, and for that reason alone the amendment should have been rejected."

Meadows v. Goff is to the same effect. After a judgment in an action of ejectment, a stranger asked leave to appear and be made a party defendant, upon the ground that the land belonged to her, and not her husband, who had been sole defendant. The court held she came too late.

We see nothing in either of these cases which militates against the procedure of the state court in the proceedings instituted there in aid of the satisfaction of its judgment. The label affixed to the petition praying an attachment or the appointment of a receiver is of no conclusive significance. The relief sought should determine its nature. It was not thereby sought to amend the original petition, nor to tack onto the original cause of action a new and distinct suit, as in Brown v. Vancleave, cited above. The relief was plainly in aid of the judgment already rendered, differing in kind only from an alias execution, a writ of attachment, or a writ of mandamus. A receiver was sought as a means of impounding property of the judgment debtor and applying it to the satisfaction of the judgment rendered. The appointment of a receiver was neither more nor less than the seizure of the judgment debtor's property for the satisfaction of the judgment of the court by an equitable attachment.

Aside from the general equity powers of the Jefferson circuit court, under which a receiver might be appointed under circumstances authorizing such action by a court proceeding according to the usual course of a court of equity, there was a statute which expressly granted power to appoint a receiver "on motion of any party to an action" who brings himself within the terms of that law. Section 298, Rev. Codes Ky. (Carroll, 1900), reads as follows:

"On the motion of any party to an action who shows that he has, or probably has, a right to, a lien upon, or an interest in, any property or fund, the right to which is involved in the action, and that the property or fund is in danger of being lost, removed or materially injured, the court, or the judge thereof, during vacation, may appoint a receiver to take charge of the property or fund during the pendency of the action, and may order and coerce the delivery of it to him. The order of a court, or of the judge thereof, appointing or refusing to appoint a receiver, shall be deemed a final order for the purpose of an appeal to the court of appeals: provided, that such order shall not be superseded."

Sections 439 and 441 of the same Codes read as follows:

"After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an equitable action for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and, in such actions, persons indebted to the defendant, or holding money or property in which he has an interest, or holding evidences or securities for the same, may be also made defendants."

"In such action the plaintiff may have an attachment against the property of the defendant in the execution, similar to the general attachments provided for in chapter three, of title eight, without either the affidavit or bond therein required."

Having, as we conclude, already acquired jurisdiction over the defendant, by process duly served in the original suit, the ruling of the learned judge of the state court was, in effect, that the law of Kentucky did not require that a new subpœna should issue before he could, in aid of the enforcement of the judgment rendered, act upon an application for a receiver, and that, the defendant being already before the court under primary process, no further notice was necessary as a condition to the seizure of its property to compel satisfaction of its judgment. It may be that in this ruling that court erred; but we are not content to so decide in the absence of some statute more explicitly requiring such new summons or other notice, or some decision of the supreme court of Kentucky in conflict with the decision as to the law of Kentucky made in the very case now under examination.

Whether the decision of Judge Toney was rested upon the general powers of a court of record having general law and equity jurisdiction, or was based upon the interpretation of sections 298 or 439, it was the decision of a court whose jurisdiction had not been exhausted by the rendition of its judgment, but continued until it should be satisfied for the purpose of the issuance of all proper writs or process in aid of its enforcement. Having jurisdiction through the service of the primary summons, everything subsequently done within the general sphere of its power to compel the satisfaction of its judgment should be held as conclusive, when collaterally assailed in the courts of another jurisdiction, unless it is impeached for fraud. If the court erred in its construction of the statute or in the exercise of its powers by appointing a receiver without notice, the remedy was by seasonable proceedings in error. Cornett v. Williams, 20 Wall. 226, 250, 22 L. Ed. 254; Laing v. Rigney, 160 U. S. 531, 542, 16 Sup. Ct. 366, 40 L. Ed. 525.

In Elder v. Mining Co., 7 C. C. A. 354, 58 Fed. 536, the court of appeals for the Eighth circuit, speaking by Circuit Judge Caldwell, said:

"The court had jurisdiction of the parties and the subject-matter, and it had the power, and it was its duty, to hear and decide every question of fact and law that arose in the progress of the case, until it was finally disposed of. It was its duty to inquire and decide whether the requirements of the practice act, in the particular mentioned, had been observed. The presumption is that it did inquire, and that it decided the question rightly; and this presumption is of conclusive force as against a collateral attack upon the judgment. But, if this or any other question of law or fact which arose in the progress of the case was erroneously decided, the jurisdiction of the court and the validity of its judgment would not be affected thereby. An erroneous decision does not devest a court of its jurisdiction over the case. Elliott v. Peirsol, 1 Pet. 328, 340, 7 L. Ed. 164. If it commits errors, they can only be corrected by appropriate appellate procedure in a court which by law can review the decision. Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 997. But neither this court nor the circuit court is invested with appellate or supervisory jurisdiction over the state courts, nor can either reverse, vacate, or modify their judgment, in cases in which they had jurisdiction of the parties and the subject-matter. Randall v. Howard, 2 Black, 585, 17 L. Ed. 269; Nougue v. Clapp, 101 U. S. 551, 25 L. Ed. 1026; Central Trust Co. v. St. Louis, A. & T. Ry. Co. (C. C.) 40 Fed. 426. The judgment of June 10, 1882, even if it was erroneous, was not void, and has the same force and effect as if no error had been committed in its rendition."

3. But if we are in error in respect to the law of Kentucky, and that under the law of that state a new writ of summons should have issued as a prerequisite to jurisdiction under the proceedings supplementary to the primary judgment, we are then confronted with the grave question as to whether, under section 720, Rev. St., the court below did not err in issuing the injunction against the receiver of the state court. That section reads as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The position of the court below, and of the counsel for appellee here, is that, if the state court exceeded its jurisdiction by assuming to appoint a receiver in aid of the enforcement of its own judgment without a new summons or notice, the proceeding under which its jurisdiction in that respect was invoked is to be regarded as not being a "proceeding" within the meaning of section 720, and that a receiver appointed under such circumstances is not in any sense an officer of the state court, and that an injunction against such an interloper is "in no way enjoining a proceeding in a state court." To so narrow a construction of the term "proceedings in any court of a state" we cannot assent, and no authority has been produced which sanctions any such definition. The supplemental petition filed in the primary suit was an appeal to the supposed power of the court to order any other or further writs or process necessary to compel payment of its judgment. The petition constituted a "proceeding" in court, whether we regard it as a new action or as a mere collateral and supplemental pleading. In point of fact the "proceeding" was regarded neither by the state court nor by the party filing it as a new action, but as a

collateral and supplemental appeal to the continuing jurisdiction of the court until its judgment should be satisfied; and, if the action of the state court is subject to criticism, it is because, when its jurisdiction was thus invoked, it erred in assuming that it might act upon the constructive notice of the primary suit, and without a new writ of summons or other form of notice.

But does it follow, because the state court exceeded its jurisdiction by thus appointing a receiver in aid of the enforcement of its own judgment without notice, that a court of the United States, upon the application of the judgment debtor and in defiance of the injunction, which forbids any interference with the receiver in the discharge of his duties, may enjoin that receiver from obeying the order of the court, whose officer he colorably was, or dispossess him from the custody of the property which he had been directed to hold? There is no pretense of any prior suit involving the same controversy in the United States court, nor of any prior possession, constructive or actual, of the res which the receiver was ordered to reduce to possession. The injunction of the state court, forbidding interference with its receiver, is met with a counter injunction forbidding the receiver to proceed with the duties of his appointment, and forbidding his interference with the property of the Mutual Reserve Life Fund Association, which the state court had specifically directed him to take possession and custody of. Which court shall the receiver obey? Unless one court or the other shall yield its pretensions, nothing remains but an appeal to force. Fortunately, the state court, while justifying its action in an opinion of vigor, but commendable courtesy, has directed its receiver to apply to the circuit court to discharge its injunction, and to appeal to this court from any order continuing it in operation.

· If there are principles of comity or of statutory construction by which so deplorable a conflict between coequal courts of concurrent jurisdiction may be avoided, and the operations of our independent systems of judicature rendered harmonious, it is our highest duty to discover and apply them. "It forms a recognized portion of the duty of this court," said Justice Campbell, in Taylor v. Carryl, 20 How. 583, 595, 15 L. Ed. 1028, in speaking for the court, "to give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the state and the Union, so that they may co-operate as harmonious members of a judicial system, coextensive with the United States, and submitting to paramount authority of the same constitution, laws, and federal obligations." Continuing he said:

"The decisions of this court that declare such an aim, and that embody the principles and modes of administration to accomplish it, have gone from the court with authority, and have returned to it, bringing the vigor and strength that is always imparted to magistrates of whatever class by the approbation and confidence of those submitted to their government."

It is a rule of almost universal application that, between courts of the same sovereignty and concurrent jurisdiction, the court which first acquires jurisdiction of the controversy or of the res should be suffered by every other court to decide every question within

the sphere of the pending cause, and to continue in the possession of the subject-matter of the controversy until every question before it shall be decided and the res discharged from its control. This rule has its foundation, perhaps, in comity; but the fruits of its recognition have been so beneficent, when applied to courts of concurrent jurisdiction created by different sovereignties, as to justify the conclusion that it is not only a rule of comity, but one of necessity. The cases are numerous which recognize its binding force and illustrate its wide application. No useful purpose will be subserved in making quotations from them. We content ourselves with the citation of a few which are most in point. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Tarbles' Case, 13 Wall. 397, 20 L. Ed. 597; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; Bank v. Stevens, 169 U. S. 432, 452, 18 Sup. Ct. 403, 42 L. Ed. 807; Riggs v. Johnson Co., 6 Wall. 166, 18 L. Ed. 768; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660; Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1; Bank v. Folsom, 21 C. C. A. 568, 75 Fed. 929; Mills v. Insurance Co., 40 C. C. A. 394, 100 Fed. 344; Aultman v. Brumfield (C. C.) 102 Fed. 7; Senior v. Pierce (C. C.) 31 Fed. 628; Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399.

The courts of the state and of the United States are, as to each other, foreign courts. Nevertheless the power sometimes exercised by courts of equity to restrain parties within their jurisdiction from proceeding in a foreign court does not apply to them, and it has long been recognized that state courts cannot enjoin proceedings in the courts of the United States, nor the latter in the former courts. Story, Eq. Jur. §§ 899, 900; Bank v. Stevens, 169 U. S. 436, 462, 463, 18 Sup. Ct. 403, 42 L. Ed. 807. Section 720 originated in 1793, and is a legislative command affirmatively enforcing this rule of comity by expressly prohibiting the enjoining of proceedings in state courts, except when authorized in bankrupt cases. Some cases other than bankruptcy suits have been held not to be within the literalism of the statute. Thus it has been held that the statute does not prevent a court of the United States from protecting its own prior jurisdiction over the property in controversy (Iron Mountain R. Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113), nor from enforcing its own judgments in causes removed from the state court (French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497). So it has been held that, when the requisite federal jurisdiction exists, a bill in equity will lie to deprive parties of the benefits of a decree or judgment obtained by fraud in a state court. Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407; Arrowsmith v. Gleason, 129 U. S. 86, 101, 9 Sup. Ct. 237, 32 L. Ed. 630; Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547.

In Marshall v. Holmes, 141 U. S. 589, 599, 12 Sup. Ct. 62, 35 L. Ed. 870, a bill to annul, on the ground of fraud, judgments rendered by a state court was upheld; the court, among other things, saying:

"While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. It would simply take from him the benefit of judgments obtained by fraud." '

It is plain that in' all these cases the federal court was violating no rule of comity, for in every one of the supposed exceptions to the statute the court was either protecting its own prior possession of the res, or of the controversy, or enforcing its own judgment. This is true of a suit for the nullification of a judgment upon the ground of fraud. The relief sought in such a case would be the subject of an independent suit in equity, and, if the requisite diversity of citizenship existed, such a suit could be maintained in a circuit court of the United States, and any injunction against the enforcement of the judgment nullified for fraud would be mere process for the enforcement of its own judgment, and operative only through its jurisdiction over the parties thereto. In passing, however, it may be observed that in none of the cases of this class reported was any injunction actually granted in the federal court. In Marshall v. Holmes an injunction was allowed in the state 'court before removal. This remained in force, for the cause stands after removal just as it did before. Bondurant v. Watson, 103 U. S. 281, 287, 26 L. Ed. 447. None of these instances of so-called exceptions made by judicial construction of the statute apply to the case in hand.

The effort to remove the proceeding under which the receiver was appointed was rightly denied; for, in any view we take of the matter, it must be regarded as a proceeding ancillary to the primary suit, and not as an independent suit. Barrow v. Hunton, 99 U. S. 80, 85, 25 L. Ed. 407; Marshall v. Holmes, 141 U. S. 589, 597, 12 Sup. Ct. 62, 35 L. Ed. 870. Unless the court below can enjoin the proceeding in the state court and prevent the receiver thus appointed from executing the orders and directions of that, court, it is plain that no equitable jurisdiction exists. But it is said that neither the statute nor any rule of comity requires the United States courts to refuse a remedy by injunction against any proceeding under which property is about to be taken without due process of law. The receiver was armed with the authority of the Jefferson circuit court. He was colorably, at least, its officer, and his action was its action, his possession its possession, though constructive, and not actual. It is not enough for one to say:

"This process under which my property is about to be taken is issued without authority, or' the officer who assumes to exercise dominion over my property was appointed by a court which exceeded its jurisdiction in appointing and instructing him."

The effect of the appointment of the appellant as receiver, under the terms of the order, already cited, was to place him constructively in possession of .the property of the appellee association within the state of Kentucky. To obtain actual possession he had, when

enjoined, notified the association debtors to pay their debts to him, and had thus done all that was possible, without instituting suit, to reduce these choses in action to his actual possession. Is it possible that under such circumstances the receiver may be ousted from its constructive possession, and the hand of the state court stayed, while the United States court determines the question as to whether under the law of Kentucky the state court had the jurisdiction to make the order and take the step complained of? No case has been cited which gives support to this contention. It is not relevant to say that a void judgment is a nullity, and that whenever it is set up as a justification its voidness may be shown. Nor is it relevant to say that the jurisdiction of the court is always a subject of inquiry when a foreign judgment is sued upon.

The question we have to deal with involves no such question, but concerns the power of a United States circuit court, in view of section 720, to enjoin a proceeding in a state court of concurrent jurisdiction for the purpose of determining whether or not it had exceeded its jurisdiction in respect to the matter complained of. A receiver is peculiarly the hand of the court which appoints him. His possession, whether actual or constructive, is but the possession of the court, and, when he is dispossessed or enjoined, the court is dispossessed or enjoined. Can it need anything more than the plain unmistakable language of the statute to perceive that such a case is within both its letter and spirit? Is it enough to take a given case out of the statute that the complainant, asking an injunction against action under an order, a writ, or process from a state court, challenges the power of the court to make the order or issue the writ complained of?

It will not do to say that the owner of property taken constructively or actually, or about to be so taken, by invalid order or process of a court of another jurisdiction, is otherwise without remedy. Such an owner may apply for relief to the court under whose authority his property has been seized. Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1, 16 U. S. App. 325; Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Lammon v. Feusier, 111 U. S. 17, 4 Sup. Ct. 286, 28 L. Ed. 337. If the officer taking the property exceeds the authority of his writ, he may be sued in any court having jurisdiction in an action of trespass. Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257. A third remedy consists in the right to sue for the recovery of the property after the hand of the court seizing it has been raised. If the taking was under a proceeding void for want of due process of law, the title of one acquiring it under such an invalid proceeding would be unavailing. Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808.

To prevent such unnecessary conflicts of jurisdiction as that presented on this record, the statute (now section 720, Rev. St.) was enacted. The burden is upon one who asserts an interpretation of that provision which would tend to weaken its force and defeat its

beneficient purposes. The spirit of the rule of comity between courts prevents interference, not upon any question of ultimate right or wrong, but upon the question as to which jurisdiction had first attached. This rule is clearly and definitely established. Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Bank v. Folsom, 21 C. C. A. 563, 75 Fed. 929. There may be instances in which the question as to which of two conflicting authorities should prevail may turn upon priority of actual seizure and custody of the property in suit; but the cases in which a distinction between actual and constructive seizure and custody has been observed have been cases in which the jurisdiction of the United States courts has been exclusive, and not concurrent with the state courts. Thus, in Taylor v. Carryl, 20 How. 583, 601, 15 L. Ed. 1028, the facts were that a vessel had been actually seized under an attachment issuing from a state court, and was under order of sale made by the state court, when process issued under a libel filed in the district court of the United States for mariners' wages and supplies. It was held that the libel did not devest the officials of the state court of their authority over the vessel, and that of the two sales made, one by the sheriff and one by the marshal, the sale by the sheriff conveyed the legal title and the sale by the marshal was inoperative. The decision was expressly put upon the single ground that, while the property levied upon was in the actual possession of one jurisdiction, it should not be taken by an officer acting under another. In Moran v. Sturges, 154 U. S. 256, 276, 14 Sup. Ct. 1019, 38 L. Ed. 981 et seq., the facts were much the same, with this distinction: The state court had not made any actual seizure of the vessels, though it had appointed a receiver, who had not qualified when the vessels were seized by the marshal under libels filed subsequent to the proceedings for appointment of a receiver in the state court. The holding was—First, that the state court had no authority to enforce maritime liens; second, that, being without power to enforce such liens, it was incapable of displacing them; third, that for this reason actual possession by a state court of the res subject to such liens will not be disturbed, but; as a state court can only deal with the property subject thereto, when its jurisdiction has determined the admiralty courts may proceed; fourth, in respect of the title of the receiver, the court held that, as he had not qualified when the marshal seized the vessels, his title, by relation upon qualification thereafter, should not be carried back, so as to antedate the marshal's seizure. In respect to this the court said:

"The contention is not only that the title to these vessels vested in the receiver as of July 31st, and that in such case as this constructive is the equivalent of actual possession, but that, although the receiver did not qualify until after the seizure by the marshal, he thereupon became constructively possessed of the vessels as of July 31st, and the jurisdiction of the district court was thereby ousted. But, if the jurisdiction had attached, it would not be defeated, even by the withdrawal of the property for the purpose of the state court; and, moreover, the doctrine of relation has no application. As between two courts of concurrent and co-ordinate jurisdic-

tion, having like jurisdiction over the subject-matter in controversy, the court which first obtains jurisdiction is entitled to retain it without interference, and cannot be deprived of its right to do so, because it may not have first obtained physical possession of the property in dispute. But where the jurisdiction is not concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, while actual, or even constructive, possession may, for the time being and in order to avoid unseemly collision, prevent the one from disturbing such possession, yet, where there is neither actual nor constructive possession, there is no obstacle to proceeding, and action thus taken cannot be invalidated by relation. That doctrine is resorted to only for the advancement of justice, and, under these state statutes, is adopted to defeat fraudulent, unwarranted, and unjust dispositions of the debtor's property, and to accomplish just and equitable ends. Herring v. Railroad Co., 105 N. Y. 340, 377, 12 N. E. 763. At the time these libels were filed and the marshal seized the property, it had not been developed whether or when the receiver would or might give the security required and enter upon the discharge of his duties, and he had neither actual nor constructive possession."

The case furnishes no reason for drawing any distinction between actual and constructive possession of the choses in action of the Mutual Reserve Fund Life Association. The subject-matter of the litigation was one in respect to which the jurisdiction of the two courts was concurrent. The receiver of the state court had actually qualified, and had served notice of his appointment and authority upon the debtors of the Mutual Association. The receiver was therefore in constructive possession of the assets before the interference of the United States court was solicited. The case in this respect falls within the very distinction recognized by the chief justice, when he said:

"As between courts of concurrent and co-ordinate jurisdiction, having like jurisdiction over the subject-matter in controversy, the court which first obtains jurisdiction is entitled to retain it without interference, and cannot be deprived of its right to do so because it may not have first obtained physical possession of the property in dispute."

The rule thus stated is supported in the case of Peck v. Jenness, 7 How. 624, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257.

That the property of a stranger to the proceeding has been taken will not justify a writ of replevin, or any other dispossessory or injunctive proceeding, in the court of another jurisdiction, is well settled. Freeman v. Howe, Buck v. Colbath, and Covell v. Heyman, cited above. In Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1, the facts were that the property of a stranger to a writ from a state court was levied on and was about to be sold to satisfy a judgment against another. An injunction was sought from a circuit court of the United States to restrain such taking. The writ was denied below, and the refusal affirmed by this court. Judge Taft, speaking for this court said:

"The principle is that, in order to preserve the dignity and protect the effectiveness of the process of courts of concurrent jurisdiction, and to avoid unseemly conflicts between them and between their respective executive officers, no remedy of an injunctive or dispossessory character will be afforded by one court against the acts of the executive officers of the other court, when done under color of an order or process issuing from such other

court, because it would have the inconvenient and anomalous effect to stay the proceedings in one court to allow another court to investigate the validity of acts done under such proceedings."

No case has been called to our attention which sanctions the contention of counsel that the mere fact that the jurisdiction of the state court is challenged will justify the enjoining of one court by another. The state and federal courts are independent of each other, except in a limited class of cases, when a writ of error will lie from the highest court of a state to the supreme court of the United States. They are courts of equal dignity and of concurrent jurisdiction in respect to the subject-matter of this controversy. Neither court has the power to control or coerce the other. If the circuit court of the United States has the power and jurisdiction, when diversity of citizenship exists, to enjoin and dispossess a receiver, acting under authority of the Jefferson circuit court, upon a bill averring a defect of jurisdiction, the other must have an equal right upon a case arising presenting similar jurisdictional questions. The power must be reciprocal, if it exists. We entirely approve the view expressed by District Judge Love in Senior v. Pierce (C. C.) 31 Fed. 625, 631, in saying that:

"Inasmuch as the very purpose of noninterference is to prevent a conflict between the two jurisdictions, I can see no difference in the application of the principle whether the question to be decided by the two courts is one of jurisdiction, or of mere property right, the jurisdiction being conceded. The state court must needs decide for itself whether or not the seizure proceeding was illegal. There is no other tribunal with competent authority to decide this question for the state court. If the federal court may decide the question of the regularity of the seizure and jurisdiction adversely to the state court, and proceed to take the property from its custody by force, why may not the state court reciprocally, in any parallel case, decide the same questions when property is in our custody, and proceed by a writ of replevin to dispossess the marshal? But, assuredly, if the federal court were in possession by legal process, it would not permit the state court to decide the question of jurisdiction and wrest the property from our control. The only safe and legitimate course for the suitor is to pursue his remedy by some proper ancillary proceeding in the court first obtaining jurisdiction, and take his appeal, if not satisfied, to the final justice of the supreme court of the state, or of the United States, as the case may require. It will not do for the suitor to assume that he cannot obtain justice in one jurisdiction or the other. But at all events it is infinitely better that injustice should be done and suffered in particular cases than that a course of proceeding should be sustained fraught with all the evils of conflicting judgments and forcible collisions between the two independent jurisdictions."

Inasmuch as no relief whatever can be obtained unless the proceedings in the state court can be enjoined, the cause will be remanded, with direction to dismiss the bill for want of equity and to dissolve the injunction.