**BUXTON et al. v. ACADIAN PRODUC-
TION CORPORATION et al.**

No. 349.

District Court, W. D. Louisiana, Opelousas
Division.

Oct. 14, 1940.

T. Semmes Walmsley, of New Orleans,
La., for complainants.

James L. Helm, of New Iberia, La., for
George J. Helis and Iberia Petroleum Cor-
poration.

John R. Land, Jr., of New Orleans, La.,
for respondents.

DAWKINS, District Judge.

The complainants, Evelyn J. and A. C. Buxton, and J. W. Milner, citizens of Mississippi, filed this bill against the Acadian Production Corporation (hereafter called Acadian) and the Iberia Petroleum Corporation (hereafter called Iberia), both Louisiana corporations and against George J. Helis, also a citizen of Louisiana, seeking the appointment of a receiver for a certain mineral lease in the Parish of St. Martin, with producing wells thereon and other appurtenances. The affirmative relief demanded will be illustrated in subsequent comments.

Jurisdiction of this court is based solely upon diverse citizenship. It is alleged that the action is to enforce "equitable and legal claims to property within the jurisdiction of this court", "clear title" thereto, and to determine "the respective rights and interests of each of the complainants and defendants in and to the oil produced from said lease". The petition further alleges that the action seeks the "determination of the rights of possession for the purpose of operating the producing wells", as well as the drilling of other wells to protect the lease, and demands an accounting by those who have had charge of the property.

Further allegations are, in substance, as follows: The lease in question was given by The A. Moresi Oil Company, Ltd., in favor of George J. Helis, who assigned it to Iberia, and the "ultimate source of the claims of the parties to this suit of any interest in and to said lease is through Acadian Production Corporation of Louisiana"; that petitioners, Buxton, are each the assignee of 1/128th of 68¾ths per cent. of the 7/8ths working interest transferred by Iberia to Acadian January 22nd, 1940; that Milner is assignee "of an oil payment out of one 1/128th of the same interest in the sum of $2,500"; that other persons hold similar undivided interests in the lease, and still others are due various sums in "oil payments". It is further alleged that suit has been filed by Acadian against Alex W. Swords and others in the state court for St. Martin Parish, "to set aside the assignment made by it to them on the ground of failure of consideration or in the alternative, misrepresentation"; that Iberia had assigned to Acadian 68¾ths per cent. of the 7/8ths working interest in the said lease on January 22nd, 1940; that after drilling the first well, a dispute arose between Acadian and Iberia "over the management and operation of the lease"; that

as a result Acadian sued Iberia in the state court and a "judicial sequestration of said property was obtained on an ex-parte order, and one George J. Helis", who is the president of Iberia, "was appointed administrator"; that Helis, while so acting, had purchased an interest in said property in violation of the laws of the state. Further, that because of said dispute, Acadian had sued Helis in the state court of Orleans Parish, demanding return to it of monies paid to him "as an employee of Acadian * * * for services he failed to perform" in connection with the operation of the lease, and also for damages growing out of the breach of said contract of employment. Further, that more than 25,000 barrels of oil had been produced from said property "but none of these complainants or any of their class have ever received any payment therefrom"; that petitioners are informed and believe and therefore allege that the said Helis, who is administrator under the appointment of the state court, president of Iberia and a stockholder in Acadian "has threatened to top-lease" the lease in question, which will jeopardize the interest of all these complainants, as well as the stockholders of Acadian and others in the class of complainants; that the "so called administrator now in possession of the property" is acting without having given bond, which also jeopardizes the interests of all concerned; and for all of which reasons, a receiver should be appointed to conserve and protect the interests of the parties.

The petition further alleges that Iberia and Helis have alleged (presumably in a suit in the state court) that Acadian had breached its contract with Iberia, and that, therefore, Acadian has "no right in and to said lease and that all persons holding under Acadian" are "without any rights in and to the oil produced from said lease"; and that notwithstanding the assignment of complainants and persons in their class had been recorded, they were not "made parties to or defendants in any proceedings whatsoever". Further, that, none of the debts contracted in drilling the first well have been paid, notwithstanding ample funds are available for that purpose.

The petition further alleges as follows:

"Your complainants further allege that there has developed a fight and argument between the Acadian Production Corporation and the Iberia Petroleum Corporation as to who shall have the right to oper-

ate and manage said property and that these parties have not been able to amicably adjust and compound their differences and that as a result of said argument and lack of development in accordance with the terms and conditions of said lease with the landowner, Moresi, the rights and interests of your complainants and persons of their class are being seriously jeopardized and that unless a receiver is appointed your complainants will suffer irreparable loss in that they may lose their undivided interest in and to this valuable operating lease by failing to have drilled the required number of wells provided for in the original lease with the landowner. Your complainants do here attach copy of the original lease executed by and between J. J. Moresi to the Iberia Petroleum Corporation and subsequent lease between the Iberia Petroleum Corporation and the Acadian Production Corporation and two assignments to Evelyn J. Buxton, A. C. Buxton of Gulfport, Mississippi, and oil payments to J. W. Milner of Gulfport, Mississippi, and make same part of this original petition as if written herein in full.

"Fourteenth.

"Your complainants further urge and demand that the said George Helis do account for the oil or the proceeds of said lease that may have come into his hands and that a full report and accounting of his stewardship be had."

Plaintiffs pray as follows: That a receiver be appointed for the lease and appurtenances with power and authority to take charge and operate the lease; that an injunction issue restraining Acadian, Iberia and Helis, both as administrator and individually, as well as all other persons, their agents or employees, from interfering with the receiver "in the operation of the lease" and that Helis also be enjoined from "top-leasing or interfering with the rights of the various parties set up in the original petition"; that all persons be enjoined from instituting legal proceedings against the property; that a master be appointed to hear and determine the claims of all persons in and to the property, as well as those of creditors and that an accounting be required from the defendants herein; and finally, "Complainants further prays that upon proper hearing that the priority and extent of interest of the various claimants within the class of your complainants be established and that further the Court remove the cloud from their title and that in the event the Court should find that no one member of the various classes of owners of the property in question was qualified and entitled to possess and operate the property of the oil lease in question to the exclusion of all other members of a similar or like class then in that event that the property in question, unless capable of being equally divided in kind, be ordered sold."

This bill of complaint was filed on August 14th, 1940, and the defendants were ordered to show cause on the 26th of the same month why a receiver should not be appointed as prayed for.

On the same day, that is, August 14th, 1940, the defendant, Acadian, appeared and filed its answer admitting substantially the allegations of the petition. Article 15 of its answer is quoted as follows: "Further answering, defendant avers that the contract of January 22, 1940 by and between Acadian Production Corporation of Louisiana and Iberia Petroleum Corporation alleged in Article Fourth of the petition created under the laws of the State of Louisiana an ordinary partnership by and between the corporations to develop the said lease, and the effect of the appointment of George J. Helis as administrator under judicial sequestration by the 16th Judicial District Court in and for the Parish of St. Martin, State of Louisiana, the said Helis also being actively engaged in performing the function of president of Iberia Petroleum Corporation, in effect has placed the entire control and the operation of this said property in the hands of the owners of a minority interest in the property, and has the effect of depriving the defendant herein of its property without due process of law in contravention of the Fifth and Fourteenth Amendments of the Constitution of the United States of America, and jeopardizes the interest of your defendant herein as well as complainants, and the persons, firms and corporations mentioned in Article Fourth of the petition."

This defendant also makes extensive additional charges against its co-defendant, George J. Helis, and joins the plaintiff in the prayer for a receiver, injunction, appointment of a master for the same purposes as alleged in the bill of complaint, for an accounting, and that "defendant be declared the legal holder of all interests, through duly executed and recorded assignments"; that "the court remove the cloud from the title and that in the event the court should find that no one member of

the various classes of owners of the property in question was qualified and entitled to possess and operate the property of the oil lease in question to the exclusion of all other members of a similar or like claim, then in that event, the property in question, unless capable of being equally divided in kind, be ordered sold."

Defendant, Acadian, attaches to its answer copies of numerous proceedings in the state court, which it also attacks including the judicial sequestration of the property.

At the hearing of the application for a receiver on August 26th, the following pleadings were also filed: 1. A motion to dismiss by Iberia on the ground (a) that the bill fails to state a cause of action against it; (b) that the court is without jurisdiction of the subject matter, since the bill affirmatively shows that the property is already "in the possession of and under seizure by the state court for St. Martin Parish"; (c) because the bill fails to state that the value of the interest of each complainant exceeds $3,000; and 2. A similar motion to dismiss by George J. Helis.

At the same time, Iberia filed a return or answer to the application for the appointment of a receiver. It admitted the citizenship of the parties as alleged; denied certain of the allegations and alleged that the suit was a collusive one between plaintiffs and Acadian, of which Mrs. Buxton is a stockholder and director; admitted that the interests of complainants were acquired from Acadian, but denied that the "title to the oil produced under said lease is involved in this suit" or that plaintiffs are in the same class "with other owners of over-riding royalty interests" entitled to litigate on their behalf; admitted that Iberia was the owner of the 7/8ths working interest of the lease and that it had executed the assignment to Acadian, but averred that "a suit is now pending in the State court" seeking to "annul and set aside said assignment". Admitted the dispute between Acadian and Iberia as to the performance of the terms of the assignment and operation of the lease, as a result of which it is alleged a suit had been filed in the state court by Acadian against Iberia, in which a judicial sequestration had been ordered by the stated court, but that Acadian had voluntarily dismissed said proceeding; that thereafter Iberia had filed a suit in the state court to annul the assignment, in which other persons had intervened and prayed for a second judicial sequestration of the property and the appointment of an administrator, which was done in the person of said Helis, all as disclosed by copies of the proceedings in the state court, attached and made part of the said return or answer; that the action of the state court in these matters had been attacked by an application for a writ of prohibition to the Supreme Court of the State, which had been denied; that Acadian had also attempted to prevent the collection of certain amounts due from oil produced from the lease, and failing in this respect, had sought an appeal, which was denied, and that it again applied to the State Supreme Court for relief, which was likewise denied, "for the reason that the judgment of the district court was interlocutory and that Acadian * * * had not shown irreparable damage or loss" as appeared from copies of such proceedings, also attached to the answer; that the present application is an attempt to have this court review the rulings of the state court; that the lease and proceeds of all oil produced are in the custody of the state court; denied any intention on the part of Helis to "top-lease" the property, and averred that all of his acts were done to conserve it for the benefit of those entitled thereto; that T. Semmes Walmsley, attorney for complainants herein, is attorney for Acadian, also its former president and is an alleged creditor thereof; that this court is without jurisdiction because the state court had first acquired jurisdiction and possession of the property by lawful proceedings; that no cloud exists as to the alleged title of the complainants, except the suit by Iberia in the state court to annul the assignment to their transferer, Acadian, and this court is without power to order a discontinuance thereof as such cloud, and finally, that there is a nonjoinder of parties, in that none of those having "over-riding royalty interests are made parties to this suit"; and that they and the sheriff of St. Martin Parish are necessary parties to this proceeding.

Helis also filed an answer or return substantially the same as that of Iberia and further setting forth the necessity for drilling or developing the lease according to its terms to avoid forfeiture or loss of some of the lands, which would be seriously interfered with if a receiver is appointed by this court; that the interests of the complainants represent less than 1½ per cent. of the total, "whereas at least seventy per cent (70%)" has approved Helis' management. He prayed that plaintiffs' demands be denied.

Likewise, at the hearing, the complainants filed an amended petition alleging that the appointment of the judicial sequestrator was "null and void, and in violation of Articles 274 and 283 of the State Code of Practice" and the possession flowing therefrom is illegal; that the suit in which said appointment was made was not such as is contemplated by the law of Louisiana, but is solely for the cancellation of a contract; that it is an action in which possession of the property or its ownership is not in dispute; that a petition for the adjudicating of Acadian an involuntary bankrupt has been filed in the Eastern District of Louisiana "thereby further jeopardizing the rights of the complainants", making it impossible for the lease to be developed in accordance with its terms and that the sequestrator is without authority to do so; that Helis has sold and will continue to sell the oil in which the complainants have an interest; that he has furnished no bond for the faithful performance of his actions, and that he is financially unable to respond to any judgment which they might obtain against him; that in addition to the issue of title herein, there are three distinct funds "held by different individuals which should be interpleaded and brought into this court"; and that to prevent a multiplicity of suits and for the protection of the rights of all concerned, a receiver should be appointed. The prayer was in substance the same as that in the original petition.

Also at the hearing, the defendant, Acadian, filed a supplemental answer, in which it declared its desire to make a "counter claim in the nature of interpleader"; that "by reason of a certain contract and assignment, dated January 22nd, 1940", it had acquired the said 68¾ths per cent interest of the ⅞ths working interest of the lease in question, and that it has a "vendor's lien on thirty-one and one-fourth per cent (31¼%) of all the oil produced or sold from said property, representing the interest reserved by Iberia * * *" which was to remain, in effect until the cost of drilling two wells had been paid; that it has an interest in the lease "far in excess of $500", and that parties other than plaintiff "have acquired an interest in the lease", while still others "have acquired oil payments" against it; that this defendant has instituted against Alex W. Swords, Dr. C. W. Swords and John Murrell, in St. Martin Parish, a suit to set aside certain assignments to these individuals for want of consideration and in the alternative for misrepresentation. The answer then sets forth certain contracts or obligations which it had entered into with other persons requiring the payment of several thousands of dollars out of oil payments from the lease; that the said Alex W. Swords and George J. Helis had attempted to have other persons institute proceedings for the appointment of a receiver to this defendant and had also participated in the activities leading to the filing of involuntary bankruptcy proceedings against defendant; that this defendant, Acadian, had deposited "in the registry of the court (this court) photostatic copies" of said original lease to Helis and of his assignment to Iberia, together with a similar copy of the "assignment to this defendant by Iberia", there "to abide the judgment of this court." Further, that defendant has an interest of "eight point, naught eight (8.08) per cent remaining in the said lease in addition to other interest owned but subject to oil payments together with the vendor's lien" heretofore referred to. The said amended answer of Acadian then recites the proceedings which it had instituted in the state court resulting in the appointment of Helis as judicial sequestrator, and its subsequent dismissal, but alleges that Helis had filed an account, copy of which is attached; that Helis, as administrator under judicial sequestration, had entered into a contract with "General Oil Company & Associates", representing himself as owner of the oil purchased and warranting the title in the sale thereof; that this defendant had filed opposition to said account; that Helis claims the entire working interest of said lease, "adversely to the claims of complainants in this case", as well as this defendant and other interest holders; that the complainants are citizens of the state of Mississippi, and that Helis is a resident of New Orleans, and a citizen of Louisiana; that in a suit by Iberia against Acadian, Helis had again been appointed administrator and filed a further account therein, which is likewise attached to the amended answer. The answer then alleges that Helis has had painted and paid for out of the funds arising from the lease, certain signs, which he has placed upon the lands, indicating that "Iberia * * * is the owner of the property and operator of the lease * * *"; that in his said account, Helis admitted that Iberia was advancing money for the operation of the lease, and that he "is acting in the dual capacity as administrator under judicial sequestration and as president of Iberia";

that the said advances made by Iberia were without order from the state court and without conforming with the law; that Helis is ignoring the rights of this respondent and its assignees, and is attempting to set up the Iberia as a creditor superior in rank to the claims of the complainants in this suit and others similarly situated; that the proceedings in the state court, copies of which are produced, show that there has been no valid seizure of the property; that the capacity in which Helis is attempting to act is unknown to the law; that the accounts receivable shown on the accounts of Helis "are property of other interest holders herein, including Acadian" and that Helis is attempting to "clothe himself with the authority of receiver without bond, contrary to law."

The answer of Acadian further alleges "cross claim with interpleader" against the two Swords and Murrell". Acadian reserves any and all rights as to these individuals "to contest any interest demanded" by them. Similar reservation is made as to any claim by Helis on the ground that he "is indebted to Acadian" in the sum of $2,500, illegally obtained for the payment of services as a "petroleum engineer", which he did not and could not perform", and "in the alternative (for) damages due by the said Helis to Acadian * * * by breach of a contract of employment" in the sum of $2,500.

This defendant prays that a long list of persons residing in Louisiana and elsewhere be made parties defendant to respond to the complaint and to the counterclaim; that the court adjudge whether these "interest holders and complainants named in section one of the prayer of this supplemental and amended answer, or George J. Helis, individually, or George J. Helis in his capacity as a proper administrator under judicial sequestration, is entitled to the property in dispute"; that the court discharge Acadian "from all liability in the premises except as to the persons which shall be adjudged entitled to the property in dispute", and that the court "award to the defendant, Acadian * * * costs and attorneys' fees."

At the hearing, the other defendants to the bill of complaint in this case, first stated that they were not in position to answer the amended bill and later in the day, in compliance with the suggestion of the court, that if possible, a proper return be made so that all issues could be disposed of at one time, filed a supplemental return, which, in substance, denied all of the material allegations of the amended complaint.

## Opinion.

From this recital of the pleadings, it is seen that considerable confusion exists. However, there are certain fundamental principles of law covering the case, that, I believe, make it rather simple. In the first place, jurisdiction is sought upon the ground of diverse citizenship, and here again, just as in the application to this court to remove the proceedings from the state court, out of which all of this trouble grows, these complainants and Acadian, a Louisiana citizen, will find themselves arrayed on the same side against other Louisiana citizens, including Iberia and Helis, in so far as the ultimate relief sought is concerned. The appointment of a receiver is but an auxiliary remedy to some other substantive demand, and in this instance, it is the adjudication of the rights of the parties in a leasehold. The fact that complainants saw fit to make Acadian a defendant, along with Iberia and Helis, does not control, if, on the face of the pleadings, it is apparent that Acadian will necessarily occupy the position of a complainant adverse to the other Louisiana citizens. The parties must be arranged on the sides of the controversy according to their actual interests and in this case Acadian would have to become a plaintiff and, as held in disposing of the application to remove, it would seem, is an indispensable party. In any event, it has filed an answer which asserts an interest adverse to the interests of other defendants, and substantially the same as that of complainants. It is true that Acadian attempts in its answer to set forth what it styles a proceeding in the nature of an interpleader, but on the face it seems clear that it does not come within the requirements of a straight interpleader procedure as contemplated by Subsection 26 of section 24 of the Judicial Code (Subsection 26 of Section 41, Tit. 28 U. S.C.A.). To be entitled to file such a proceeding, the complainant, or defendant when sued, must be a mere stakeholder and without any adverse claims of his own to the fund or property. Security Trust & Savings Bank et al. v. Walsh et al., 9 Cir., 91 F.2d 481; Metropolitan Life Insurance Company v. Mason et al., 3 Cir., 98 F.2d 668; Cramer v. Phoenix Mutual Life Insurance Company, 8 Cir., 91 F.2d 141. The following is quoted from the syllabi of the last-cited case:

"13. Interpleader * * *

" 'Interpleader' is an ancient equitable remedy which recognizes the right of a disinterested stakeholder, from whom several persons claim the same debt, to have conflicting claimants litigate the matter among themselves without embroiling the stakeholder in their controversy.

"14. Courts * * *

"Where federal jurisdiction rests on diversity of citizenship, a custodian or stakeholder of property is a mere nominal party whose citizenship does not affect question of federal jurisdiction."

In other words, to be entitled to maintain such a position, the pleader, as above stated, must be wholly without interest, and a mere stakeholder who wishes to be relieved from a multiplicity of suits. If Acadian's answer disclosed such a relation to the present case, it would make no difference that its citzenship is the same as that of other defendants, if two or more of them were citizens of different states. On the contrary, both from the bill of complaint and by its own answer, it appears that Acadian has a serious controversy and contest with Iberia and other Louisiana citizens in this matter and the issues are not between two or more citizens of different states alone, but also between this defendant and those citizens of Louisiana, in which it will be arrayed on the side of complainants.

In addition to the lack of diverse citizenship, as above mentioned, it appears that the state court had already taken possession of the property when this suit was filed in a case in which the plaintiff, Iberia, seeks to annul the assignment of an undivided interest in the lease by it to Acadian, and from which the right to possession and management of the lease and producing wells is seriously involved. Regardless of what this court might think about the meanings of the Articles of the Code of Practice authorizing judicial sequestration, relied on by complainants, if the Supreme Court of the State should hold that the action of the district court was within their provision, then there would be nothing that this court could do about it, because federal courts are bound by the construction of state statutes in its own courts, unless the result would be to violate the national Constitution. As I see it, no provision of that Constitution is involved or sufficient allegation made that it has been violated. Efforts have been made to have the Supreme Court of the State review the action of the state trial court in ordering judicial sequestration, but this relief has been denied. It is true, that as alleged, the refusal was upon the ground that the order of the lower court was interlocutory in its nature and would work no irreparable injury for which reason the matter would be considered on appeal after a trial of the merits. Therefore, the matter resolves itself into the question of whether or not the action of the trial court was an absolute nullity as was held to be true in the case of Hammock v. Loan & Trust Company, 105 U.S. 77, 26 L.Ed. 1111. In this case, the property of a railroad company had been in the possession of a receiver appointed by the federal court "from the first day of October, 1874, until the fifth day of June, 1876", on which latter date by stipulation, the receiver was discharged "without being required to render an account", and the bill was dismissed at the cost of the complainants. On the next day, the assignees of two judgments in the state court, upon which executions and returns of no property found had been filed, applied to the state district court "in vacation" and had a receiver appointed. The Judge without notice to the railroad company made the appointment and required it to surrender all of its property to the state receiver, who took possession. Thereafter, on the 13th of June of the same year without knowledge as we infer from the record of the suit in the State court, the Trust Company, presumably as trustee, under a bond mortgage, commenced foreclosure of the mortgage alleging default, insolvency and other appropriate reasons, including a charge of collusion between the former receiver in the federal court and the plaintiff in the state court, which had brought about the dismissal of the first proceedings in the federal court. Upon the filing of this last-mentioned petition, the federal court again appointed a receiver, with the usual injunctive provisions, etc. A few days later, the Trust Company, plaintiff in the foreclosure in the federal court, filed its application in the state court "to be made a party defendant * * * also its answer and cross-bill therein", together with a petition to remove the cause to the federal court. Subsequently, an application was also made to the state court to discharge its receiver "upon the ground, among others, that he was illegally appointed *in the vacation* of court" (italics by this court). The latter application was denied. The receiver of the federal court next made application to be made party to the proceedings in the state court, but "the judge declined to take action, up-

on the ground that he could not legally do so in the vacation of this court". On July 19th, 1876, the Trust Company filed the necessary removal papers in the federal court, which took jurisdiction and ordered the state court receiver to surrender the property to the federal receiver, which was done. At the November term, 1876, the plaintiffs in the state court filed therein a motion to strike the papers filed by the receiver of the federal court, which was sustained on May 4, 1877. Thereafter, the rolling stock was surrendered by the state court to its tax collecting officers to sell in satisfaction of state and county taxes, and on the 11th day of June, 1878, the federal court entered a final judgment for almost a million dollars and directed foreclosure against the mortgaged property, including the franchise of the railroad to satisfy the principal and interest of outstanding bonds. The property was bought in for $50,000 and the sale was confirmed on April 26, 1878. The purchaser next presented to the federal court a petition informing it that the state court had directed its receiver to advertise the railroad's property for sale without right of redemption in satisfaction of a judgment previously rendered, and obtained an injunction against the proceedings in the state court. On final hearing, the injunction was made perpetual, January 17th, 1879. Appeals from both the final judgment of foreclosure and injunction against the state court proceedings were taken. The Supreme Court of the United States stated the issue as follows:

"Whether the State court or the Circuit Court of the United States first acquired control and possession of the property conveyed in trust by the Chester and Tamaroa Coal and Railroad Company, is the first question to which our attention will be directed. If, when seized under the order of the Federal court, it was in the custody of the State court, by its receiver, then, it is claimed, that all the proceedings in the former, so far at least as their regularity and validity depended upon possession of the property, were in violation of the established principles governing courts of concurrent jurisdiction in their relations to each other. Peck v. Jenness, 7 How. 612 [12 L.Ed. 841]; Taylor v. Carryl, 20 How. 583 [15 L.Ed. 1028]; Freeman v. Howe, 24 How. 450 [16 L.Ed. 749]; Hagan v. Lucas, 10 Pet. 400 [9 L.Ed. 470].

"The solution of this question, it must be conceded, depends upon the authority which the judge of the State could lawfully exercise in vacation; for if, under the laws of the State, he had no power in vacation to appoint a receiver of the property and effects of a railroad company, the order under which Sams took possession was a nullity, and his custody was not that of the court which he assumed to represent. Counsel for appellants admits that, except to the extent expressly permitted by statute, the judge of the State court could not exercise any judicial functions in vacation. Such, beyond question, is the established doctrine of the Supreme Court of Illinois. In Blair v. Reading (99 Ill. 600), the court said: 'It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation, except such as are expressly authorized by statute.' In Devine v. People (100 Ill. 290), the language of the court was that 'judges can exercise no judicial functions in vacation, except such as they are especially authorized to do by statute.' Keith v. Kellogg, 97 Ill. 147." (105 U.S. pages 82, 83.)

After analyzing the statutes and decisions of the state court of Illinois, it was held that the judge of the state district court had no power to appoint a receiver in vacation, and that, therefore, his action was a nullity. That conclusion is expressed in the following language at page 86 of 105 U.S.: "It results from what has been said that the seizure of the property by the receiver of the Federal court was not an interference with the possession of the State court, nor in derogation of its authority. The property was not, in any legal sense, then in the custody of the State court, or of any officer by it appointed. It was, when seized by order of the Federal court, in the custody of one who assumed, without lawful authority, to represent the State court, but who in fact proceeded under a void order of a judge in vacation."

This is the principal case relied on by complainants. However, I think it can easily be distinguished from the present one. It must be admitted that the district court for St. Martin Parish had jurisdiction of the suit filed by Iberia against Acadian to annul the assignment of an interest in the 7/8ths working interest of the mineral lease, which the pleadings disclose is being operated as a producing oil property, requiring that some one have possession and be permitted to carry on until the issues can be decided. The numerous pleadings and documents filed in connection with the present application for the appointment of a receiver, reveal the seri-

ous disputes and contentions of the parties with respect to the rights to possession, management and control, which, in reality, appears to be the main bone of contention. In these circumstances, I think the judge was empowered by the very Articles of the State Code of Practice, relied on by complainants, to direct a sequestration either of his own motion, or at the insistence of any of the parties, to preserve and protect the property, pending the outcome of the litigation. The fact that he saw fit to name the agent of the sheriff, who should act as administrator in the person of the individual whom the record shows had been in charge, to continue operation, did not render that action a nullity, but at most, it was subject to review by the appellate courts of the state. The power and jurisdiction to act undoubtedly existed, and if exercised improperly, the same constituted error, which could be corrected through appeal and did not amount to an absolute nullity as in the case where a statute has withdrawn or withheld such power expressly, as in the case of Hammock v. Loan & Trust Co., supra. Being vested with such power and jurisdiction, the possession and control flowing therefrom, although incorrectly exercised, can not be ignored, or assailed collaterally as is attempted here. Phelps v. Mutual Reserve Fund Life Insurance Company, 6 Cir., 112 F. 453, 61 L. R.A. 717. In this last-cited case, objection was raised to proceedings by which the plaintiff had obtained judgment against the Insurance Company and had sought to collect thereon through seizure of premium payments in the hands of policyholders in the state. The Insurance Company sought to enjoin the action of the state court on the ground of invalidity of the proceedings. In disposing of the matter, the Court of Appeals for the Sixth Circuit, through Judge Lurton (later a Justice of the United States Supreme Court) said, at page 466 of 112 F.:

"The effect of the appointment of the appellant as receiver, under the terms of the order, already cited, was to place him constructively in possession of the property of the appellee association within the state of Kentucky. To obtain actual possession he had, when enjoined, notified the association debtors to pay their debts to him, and had thus done all that was possible, without instituting suit, to reduce these choses in action to his actual possession. Is it possible that under such circumstances the receiver may be ousted from its constructive possession, and the hand of the state court stayed, while the United States court determines the question as to whether under the law of Kentucky, the state court had the jurisdiction to make the order and take the step complained of? No case has been cited which gives support to this contention. It is not relevant to say that a void judgment is a nullity, and that whenever it is set up as a justification its voidness may be shown. Nor is it relevant to say that the jurisdiction of the court is always a subject of inquiry when a foreign judgment is sued upon.

"The question we have to deal with involves no such question, but concerns the power of a United States circuit court, in view of section 720 [28 U.S.C.A. § 379], to enjoin a proceeding in a state court of concurrent jurisdiction for the purpose of determining whether or not it had exceeded its jurisdiction in respect to the matter complained of. A receiver is peculiarly the hand of the court which appoints him. His possession, whether actual or constructive, is but the possession of the court, and, when he is dispossessed or enjoined, the court is dispossessed or enjoined. Can it need anything more than the plain unmistakable language of the statute to perceive that such a case is within both its letter and spirit? *Is it enough to take a given case out of the statute that the complainant, asking an injunction against action under an order, a writ, or process from a state court, challenges the power of the court to make the order or issue the writ complained of?*

"*It will not do to say that the owner of property taken constructively or actually, or about to be so taken, by invalid order or process of a court of another jurisdiction, is otherwise without remedy. Such an owner may apply for relief to the court under whose authority his property has been seized.* Freeman v. Howe, 24 How. 450, 16 L.Ed. 749; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; [American] Association v. Hurst, 59 F. 1, 7 C.C.A. 598, 16 U.S.App. 325; Gumbel v. Pitkin, 124 U.S. 131, 8 S.Ct. 379, 31 L.Ed. 374; Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145; Lammon v. Feusier, 111 U.S. 17, 4 S.Ct. 286, 28 L.Ed. 337. If the officer taking the property exceeds the authority of his writ, he may be sued in any court having jurisdiction in an action of trespass. Buck v. Colbath, 3 Wall. 334, 18 L.Ed. 257. A third remedy consists in the right to sue for the recovery of the property after the hand of the court seizing it has been raised. If the taking was under a proceeding void for want of due process of law, the title of one acquiring it under

such an invalid proceeding would be unavailing. Cooper v. Newell, 173 U.S. 555, 19 S.Ct. 506, 43 L.Ed. 808." See, also, Senior et al. v. Pierce et al., C.C., 31 F. 625.

It is true that the officer through whom the state court took possession in this instance is not technically termed a receiver, but an administrator under judicial sequestration. However, by whatever name he may be styled, the court exercised its jurisdiction and power in appointing him under process which contemplated the taking of possession, and possession was actually taken. If a receiver were appointed by this court, it would necessarily deprive the state court of possession and he would be entitled to injunctive process, both mandatory and prohibitory, to obtain and protect that possession. In principle the case cited and the one now before the court are the same.

It is unnecessary to discuss other issues. My conclusion is that the relief sought here should be denied, both because of the lack of jurisdiction, due to the fact that adverse parties, citizens of the same state, must be arrayed on opposite sides, and, because the state court had first obtained jurisdiction and possession of the property in question.

Proper decree should be presented.

## On Motion for a New Trial.

■ In its motion for a new trial, the Acadian Production Corporation assails the language of this court in its discussion of the attempted interpleader procedure, as being contrary to the provisions of Rule 22 of the New Rules of Federal Procedure, 28 U.S.C.A. following section 723c, and Tit. 28, Sec. 41 of Subsection 26 of the U.S.C.A.

If this was a case in which Acadian had filed suit, itself, against two or more persons, citizens of different states, even though one of them was of the same citizenship as itself, alleging that it was "exposed to double or multiple liability"; or, if having been sued, it had sought to bring in others of similar adverse citizenship under the stated rule and statute, who were seeking to impose such "double or multiple liability", a federal court would have jurisdiction of those issues. However, as pointed out in the original opinion, the present action was instituted by the complainants, claiming through Acadian an "equitable and legal right" to specific property, to-wit, an interest in a mineral lease under Section 57 of the Judicial Code, 28 U.S.C.A. § 118, alleged to be in the possession of persons other than Acadian, and at the same time demanding an accounting of Helis, another citizen of Louisiana. Acadian admits and alleges that the property is not now in its possession, but has been taken over by the state court. The attempt is then made to engraft interpleader proceedings upon these complainants' suit, and to thereby invoke jurisdiction which otherwise could not exist, for the reason that in the principal issue between complainants and Iberia, the Acadian occupies the same relation to the matter as they do, and will necessarily be arrayed on the same side with plaintiffs. In the first instance, the complainants invoked jurisdiction as citizens of a different state from the defendants, in an action in rem, which if sustained, and personal jurisdiction were not waived, the judgment could affect only the property involved; whereas, if Acadian could thus convert it into an interpleader action or one in the nature of interpleader, the result would be to transform it into a personal action, drawing in all other parties, not under Section 57 of the Judicial Code, but under the rule and statute above referred to. Boiling down the long and involved allegations of the pleadings, it does not appear that Acadian is exposed to "double liability" to any two persons for the same thing or amount, but it is indicated that there are other persons claiming distinct similar interests in the lease growing out of the same kind of contracts with Acadian.

No one is claiming to be the owner of the same interest under dual assignments, either in the lease or oil payments, but each claim is separate and distinct, either for a fractional interest or a definite sum. The prayer of Acadian's answer indicates that it considers itself in the position of a strict interpleader because it asks that it be discharged "from all liability in the premises, except as to the persons who have been adjudged entitled to the property in dispute", and that the court "award to the defendant, Acadian, costs and attorneys' fees". It certainly could not claim to be so discharged or receive attorneys' fees in anything but a strict interpleader proceeding where, being without interest and seeking to avoid a multiplicity of lawsuits, it had brought the fund or property into court to be awarded to the persons found entitled to receive it.

After further examination, I am of the view as stated in the original opinion, the real controversy is one of management and control of the lease, which is clearly an issue in the suit by Iberia against Acadian and others in the state court, which court has already taken jurisdiction of the property; and for the reasons set forth in that opinion and this memorandum, the motion for a new trial will be denied.